OPINION OF THE COURT
Eli Wager, J.
Does a clergyman who has counseled with both husband and wife in his "professional character as spiritual advisor” acquire an independent privilege against disclosure of the information acquired, notwithstanding a waiver of the privilege made in open court by both parties? This novel question is raised during the trial of this contested divorce action by a Presbyterian minister, by way of an order to show cause to quash a subpoena served upon him by the defendant wife.
Upon being sworn, the minister, by his counsel, advised the court that notwithstanding the open waiver of the privilege by husband and wife, he asserted an independent privilege against giving testimony. The clergyman argues that the statute (CPLR 4505), which provides that he "shall not be allowed” to testify absent the waivers of privilege, should not be read so as to compel his testimony despite the waivers of privilege.
This is an action for divorce commenced by the plaintiff husband on the grounds of cruel and inhuman treatment. The parties were married on September 4, 1982 in Oyster Bay, New York, by the Reverend Doctor Richard W. Reifsnyder, *169 pastor of the church which they attended and of which they were or became members. The evidence is to the effect that in 1983, upon the occurrence of marital discord, both husband and wife separately sought out the marital guidance and spiritual counsel available to them from their minister. The husband, a professed "Born-Again Christian” and the wife, who testified she was "born a Christian” and was an active participant in the life of her church, apparently resorted to the good offices of their religious leader and spiritual guide in efforts to reconcile and resolve their differences. Clearly, under such circumstances, each was required to confess or to confide in the clergyman that which was in the deepest recesses of his or her heart for the counseling to have any reasonable chance of success. Unfortunately, the marital dispute was not resolved and this action followed.
Apparently, the defendant wife is seeking testimony from Dr. Reifsnyder with respect to statements or admissions against her interest which may have been made by her husband during his sessions with the reverend. Since such confidences, if any, would have been reposed in the clergyman in the communicant-clergy relationship, it may be assumed that they have not been previously disclosed to the wife, at least not by the minister. The purpose of calling him as a witness, therefore, is in the hope of obtaining as yet uncertain information from the witness that will be prejudicial to her husband.
Upon the return of the motion to quash the subpoena, I ruled that in order for the witness to be allowed to testify, both parties would be required to waive their respective privilege against his testimony. That ruling is based upon the fact that each had given confidential information to the clergyman and that he had counseled with both. To expect that Dr. Reifsnyder could selectively reveal the information received from one spouse and withhold that received from the other is beyond reason. Of necessity, there must be commingling of confidences that would inevitably cause the breach of the privilege of a nonwaiving spouse.
Following my ruling from the Bench, both parties to the action, in open court and on advice of counsel, rose to separately declare their waiver of the privilege existing between themselves and Reverend Reifsnyder. At that point the minister’s personal attorney was permitted to argue against the court directing the witness to testify on the following grounds:
*170 (1) The rule excluding confidential communications to clergy existed long before the present CPLR 4505;
(2) Broad public policy considerations require an expanded liberal interpretation of the statute; and
(3) The minister has standing to claim the privilege for himself whether or not the litigants do.
The witness urges that the communicant-clergy privilege existed at common law and thus survives independently of statutory authority. This thesis is disputed by the overwhelming weight of authoritative texts and commentators on the law of evidence. "At common law there was no privilege as to communications or confessions to a spiritual adviser; and, in the absence of statute, no such privilege exists” (97 CJS, Witnesses, § 263). To the same effect, see Richardson, Evidence § 424 (10th ed); 8 Wigmore, Evidence § 2394 (McNaughton rev ed 1961); and Reese, Confidential Communications to the Clergy (24 Ohio St LJ 55, 57 [1963]).
In any event, it is beyond cavil that the privilege accorded the statements made by a communicant to a clergyman are matters of statute. The privilege is a rule of evidence and is not substantive law. In New York, the rule is expressed succinctly in CPLR 4505 as follows: "Unless the person confessing or confiding waives the privilege, a clergyman, or other minister of any religion or duly accredited Christian Science practitioner, shall not be allowed to disclose a confession or confidence made to him in his professional character as spiritual advisor.” At bottom, the statutory protection is extended to those statements and confidences reposed in a spiritual advisor with the knowledge and intention on the part of the communicant that such information shall remain confidential and shall be disclosed to no one. The communications so privileged must be made "to the clergyman as such in his professional capacity or character * * * by a person seeking religious or spiritual advice, aid, or comfort, and the communication must be penitential in character, and proper in order to enable the clergyman to discharge the functions of his office or advise or assist the person making the statement; and it must also have been made and received in confidence, although no express promise of secrecy is necessary” (97 CJS, Witnesses, § 263).
In one California case the court ruled that statements made by both spouses in conflict to a rabbi in the course of marital counseling sessions were not considered as privileged (Simrin *171 v Simrin, 233 Cal App 2d 90, 43 Cal Rptr 376). Yet the rabbi’s claim of privilege was upheld upon an asserted "express agreement” with both parties, "that their communications to him would be confidential and that neither would call him as a witness in the event of a divorce action” (233 Cal App 2d, at p 94, 43 Cal Rptr, at p 378), Although not controlling on the court, only the wife had waived the privilege. The husband refused to waive. Parenthetically, California is one of the very few States in which the clergyman is given an independent statutory privilege (see, Gumper, Legal Issues in the Practice of Ministry, at 42 et seq. [1981]).
A similar case in New York yielded similar results based upon an apparently contrary rationale (Kruglikov v Kruglikov, 29 Misc 2d 17, appeal dismissed 16 AD2d 735). In Kruglikov, a rabbi who had counseled with both husband and wife prior to an action for separation was ordered to appear and be examined before trial as a witness. Under the then extant Civil Practice Act § 351, the rabbi asserted his own privilege against giving such testimony on the ground that the information received by him "in the privacy of the Rabbi’s study was stamped 'with that seal of confidence which the parties in such a situation would feel no occasion to exact’ ” (29 Misc 2d, at p 18, citing Warner v Press Pub. Co., 132 NY 181, 186). Kruglikov, which appears on its face to have sustained an independent privilege on behalf of the rabbi, is distinguishable from the case at bar. In its final paragraph, following a discussion of the applicable law, the Special Term Justice held (p 18) "[t]he court, therefore, sustains the objection raised by the Rabbi, in the absence of an express waiver by the plaintiff, as provided in section 354 of the Civil Practice Act. The fact that the order for his examination was not objected to does not amount to such a waiver” (emphasis supplied). In my view, that court’s determination hinged on the absence of a waiver of the privilege by one of the communicant litigants quite apart from the court’s benign exposition of the applicable law (see, Estate of Fischer, NYLJ, Oct. 15, 1985, p 17, col 3 [Sur Ct, Queens County]). As indicated above, in the case at bar, both parties expressly waived the privilege against the witness’ testimony.
The witness’ second point urges "an expanded liberal interpretation of the statute” in view of "broad public policy considerations.” There has recently been promulgated a new Code of Evidence for the State of New York, first submitted to the 1982 session of the Legislature by the New York State *172 Law Revision Commission. This proposed legislation, yet to be enacted, represents to most observers a liberalization of the present New York rules of evidence. The revised statute as proposed by the Code is as follows:
"§ 508. Member of the clergy-penitent privilege
"(a) Definitions. As used in this section:
"(1) A 'penitent’ is a person who makes a communication to a member of the clergy.
"(2) A 'member of the clergy’ is a clergyman or other minister , of any religion, or duly accredited Christian Science practitioner, or a person reasonably believed to be so by the penitent.
"(3) A communication is 'confidential’ if not intended to be disclosed to third persons other than those present in furtherance of the purpose of the communication.
"(b) Rule of privilege; holder of privilege. A penitent has a privilege to refuse to disclose and to prevent any other person from disclosing a confidential communication between him and a member of the clergy in his professional capacity as a spiritual advisor.
"(c) Who may claim the privilege. The privilege may be claimed by the penitent, his guardian, committee or conservator, or the personal representative of a deceased penitent. The member of the clergy may claim the privilege but only on behalf of the penitent; his authority to do so is presumed in the absence of evidence to the contrary.”
A portion of the Commission’s comments to section 508 (b) and (c), which follows the exposition of section 508, is particularly pertinent here.
"The holder of the privilege is the penitent. The penitent may himself refuse to make disclosure, and he and the others specified in subdivision (c) may also prevent disclosure by the member of the clergy and by any other persons. This provision is consistent with the treatment accorded other privileges recognized in Article 5 (see, Comment to CE 505 [b]).
"(c). Subdivision • (c) provides that the privilege may be claimed by the penitent, his guardian, committee or conservator, or, if deceased, his personal representative. Additionally, the member of the clergy may claim the privilege on behalf of the penitent; the authority to do so will be presumed in the absence of evidence to the contrary.” (Proposed Code of Evidence for New York § 508, Comment, at 96.)
Thus, it appears that the most liberal interpretation of the *173 privilege affirms that the privilege is that of the penitent, not the clergy (see, The Pastor on the Witness Stand: Toward a Religious Privilege in the Courts, 29 Cath Law 1 [1984]; 24 Ohio St LJ 55, 78 [1963]). The waiver of the privilege compels the clergy to testify to that which is no longer cloaked with statutory protection. The information imparted in sacred trust is thus reduced to the mundane and ordinary intelligence which the witness, albeit a clergyman, may not withhold on pain of judicial sanction.
Finally, the minister argues that a clergyman should be entitled to claim, for himself, a privilege against disclosing any information which was imparted to him by the parties during the course of marital counseling, notwithstanding the declared waivers by both husband and wife. He adopts the view urged by the New York Board of Rabbis in Kruglikov v Kruglikov (29 Misc 2d 17, supra), " 'that any confidence reposed in him by husband or wife, individually or jointly, or anyone else who has come to him for counseling not be divulged * * * [otherwise the confidential role of the Rabbi in counseling would be completely vitiated, to the detriment of those who seek his guidance’ ”. Clearly, Dr. Reifsnyder perceives his role as a subpoenaed witness to be an abuse of his good offices, offered unselfishly to the parties in their distress and in the highest tradition of his calling. This court empathizes with him and agrees that it is utterly inappropriate and unfair of any party to use a clergyman to bolster a case by forcing the disclosure of information entrusted to the clergyman in the course of his ministry. This court’s duty, however, is to deal with the issue at hand on the basis of applicable law.
In the first instance, the New York rule (CPLR 4505) literally confers no privilege upon the clergy. The privilege is the communicant’s. This is necessarily so because the confidential information is, in the first instance, the property of the communicant and does not become the property of the clergyman who receives it for safekeeping. The New York rule provides that a clergyman "shall not be allowed to disclose” "[u]nless the person confessing or confiding waives the privilege”.
The New York rule is not the universal rule. The several States have many statutory variations on the priest-penitent privilege. There are, however, very few States which have enacted an independent, statutory privilege for the clergy (see, 8 Wigmore, Evidence § 2395). Thus, when counsel cites People *174 v Pecora (107 Ill App 2d 283, 246 NE2d 865, cert denied 397 US 1028), it is against the background of a specific statute, to wit, Illinois Code of Civil Procedure, ch 110, § 8-803, which is as follows: "§8-803. Clergy. A clergyman or practitioner of any religious denomination accredited by the religious body to which he or she belongs, shall not be compelled to disclose in any court, or to any administrative board or agency, or to any public officer, a confession or admission made to him or her in his or her professional character or as a spiritual advisor in the course of the discipline enjoined by the rules or practices of such religious body or of the religion which he or she professes, nor be compelled to divulge any information which has been obtained by him or her in such professional character or as such spiritual advisor.”
Similarly, the case of Simrin v Simrin (233 Cal App 2d 90, 43 Cal Rptr 376, supra), decided in California on other grounds, must be viewed within the framework of the declared legislative policy of that State, then and now.
"§ 1034. Privilege of clergyman. Subject to Section 912, a clergyman, whether or not a party, has a privilege to refuse to disclose a penitential communication if he claims the privilege” (Cal Evid Code § 1034 [superseded Code Civ Pro § 1881 (3)]).
Accordingly, in view of the open and declared waivers of privilege by the parties to this action and in the absence of statutory authority granting an independent privilege to the clergy, the witness’ motion to quash the subpoena is denied.