832 S.W.2d 681 (1992)
Heidi NICHOLSON, M.D. and Edward M. Stephens, M.D., Relators,
v.
The Honorable Don E. WITTIG, Judge of the 125th District Court of Harris County, Texas, Respondent.
No. 01-92-00142-CV.
Court of Appeals of Texas, Houston (1st Dist.).
June 4, 1992.
*682 Michael S. Hays, Susan C. Stevenson, Houston, for appellant.
Harold Eisenman, Alan J. Winters and Caroline Baker, Houston, for appellee.
Before DUGGAN, DUNN and O'CONNOR, JJ.

OPINION
DUGGAN, Justice.
Relators, Heidi Nicholson, M.D. and Edward M. Stephens, M.D., are defendants in the underlying lawsuit in respondent's court, in which the real parties in interest, Betty Jane Schnepel (Mrs. Schnepel) and her son, Greg Schnepel, are plaintiffs. The Schnepels filed a wrongful death lawsuit against Nicholson, Stephens, and Memorial Northwest Hospital, claiming that the death of Mrs. Schnepel's husband, Ernest Schnepel, was due to defendants' delay in treating him for a ruptured abdominal aortic aneurysm.

Summary of Pacts
On August 18, 1988, while Ernest Schnepel was in surgery for the aneurysm at Memorial Northwest Hospital, Mrs. Schnepel spoke with the hospital chaplain, the Reverend Edward Michael Shirl (Rev. Shirl). During the course of discovery pertaining to the lawsuit, plaintiffs took Rev. Shirl's deposition. At his deposition, Rev. Shirl testified that he is the chaplain at Memorial Northwest Hospital; that he is employed by the hospital; and that he was called to the hospital by the nursing supervisor while Ernest Schnepel was in surgery. Rev. Shirl stated the nursing supervisor knew that Ernest Schnepel's condition was very serious and that the family needed support. He noted that the purpose of his visit was for comfort, guidance, and spiritual counseling. When Rev. Shirl arrived at the hospital, he provided Mrs. Schnepel with a card and introduced himself as the hospital chaplain. Rev. Shirl testified that he met only with Mrs. Schnepel, though at times during the period when he was with her both the nursing supervisor and Dr. Harberg, a surgeon, were present.
During Rev. Shirl's deposition, the following exchange took place between the attorney for the Schnepels and Rev. Shirl:
Q. Is it a policy of the chaplaincy program or Memorial Hospital to reveal confidences placed in you?
A. My department has a policy that maintains confidentiality of penitent-clergy conversations except in those cases where there is harm or potential for harm to patients, family, employees, medical staff associated with Memorial Hospital.
Q. Okay. And you wouldn't want the public to know that the chaplain from Memorial Hospital revealed other confidential communications other than the exceptions you just gave, would you?
A. No, sir, I don't reveal confidences of a penitential nature.
Q. At this time the Schnepel family asserts their privilege based on the Texas Rule of Evidence 505 that forbids you and anyone else from disclosing anything *683 that Mrs. Schnepel may have discussed with you during her time at the hospital in August, 1988. We're asserting that privilege retroactively since we did not have the opportunity to assert that privilege before.
And I'm telling you that if this confidentiality privilege is breached any further that the Schnepels intend to file a personal action against you, Memorial Hospital, and the chaplaincy program.
After an exchange between attorneys for the respective parties, Rev. Shirl stated that the matters about which he would testify were outside the confidential, clergy-communication privilege and did not include anything Mrs. Schnepel confided in him of a personal or confidential nature. He also stated that his testimony concerned what Mrs. Schnepel told him regarding her husband's care and treatment when Ernest Schnepel was admitted to the emergency room and what occurred thereafter. Rev. Shirl said that he had pertinent information concerning Mrs. Schnepel's position on her husband's treatment, what she knew, and what she was told regarding her husband's care and treatment.

Issues Before the Trial Court and Relief Requested
On December 11, 1991, relators filed a "Motion for Ruling on Plaintiffs' Objections to the Deposition Testimony of Rev. Shirl," which states that: (1) the matters Rev. Shirl was going to testify about at his deposition pertain to what Mrs. Schnepel told him regarding the deceased's care and treatment when the deceased was admitted to the Memorial Northwest Hospital Emergency Room, what occurred thereafter, and what Mrs. Schnepel knew or what was told to her regarding the deceased's care and treatment; (2) none of such matters fall within the scope of the policy of Memorial Northwest Hospital regarding the clergyman-penitent privilege; (3) he was not going to testify regarding any communication Mrs. Schnepel made to him of a personal or confidential nature in his capacity as a spiritual advisor; and (4) during a portion of the time that he met with Mrs. Schnepel and discussed the deceased's care and treatment, either the Memorial Northwest Hospital nursing supervisor and/or Dr. Harberg was present.
Relators filed a supplement to their motion for ruling that included excerpts from Mrs. Schnepel's deposition. Relators directed the trial court's attention to Mrs. Schnepel's statements that she did not talk to Rev. Shirl, except briefly; that she did not even remember his name or what he looked like; that she did not ask to see him; that she did not know if he was employed by the hospital or who had called him; and that her son was present in the room at the time she spoke with Rev. Shirl. In her deposition, Mrs. Schnepel denied that she told anyone that she wanted her husband transferred to another hospital or that she did not want the surgery performed at Memorial Northwest Hospital. She questioned why a surgeon was not called in sooner and stated that whoever was responsible for delaying her husband's surgery was negligent, whether it was the doctors, the hospital, or a family member.
At a hearing on relators' motion, respondent heard testimony from Rev. Shirl. Reverend Shirl attempted to distinguish between a private conversation he had with Mrs. Schnepel concerning spiritual and personal matters, which he considered confidential, and information she conveyed to him regarding her husband's care and treatment, which was shared with the doctors and nurses at the hospital. Attorneys for relators argued that (1) conversations between Rev. Shirl and Mrs. Schnepel took place in front of other persons, so that any privilege was waived; (2) this is a medical malpractice case in which the testimony concerns care and treatment of the deceased, not matters of a confidential or spiritual nature, and the clergycommunicant privilege, therefore, does not apply; (3) the alleged delay of the deceased's surgery and the reason for the delay is the crucial issue in the case, and that in her deposition, Mrs. Schnepel denied that she wanted her husband transferred to another hospital for surgery; (4) because relators' position is that any delay in the deceased's treatment was caused by plaintiffs, Rev. *684 Shirl's testimony would, therefore, be admissible for impeachment purposes; (5) because plaintiffs claim they sustained mental anguish as the result of relators' delay in providing medical treatment, plaintiffs cannot make an offensive use of the clergycommunicant privilege to prevent relators from learning whether plaintiffs' own conduct caused the delay in treatment, and thus caused the alleged mental anguish.
Respondent signed the order about which relators complain on January 23, 1992. The order states that the matters about which Rev. Shirl intends to testify are within the scope of the clergy-communicant privilege and sustains plaintiffs' objections, under Texas Rules of Civil Evidence 403 and 505. Relators filed an original proceeding in this Court, requesting that we order respondent to vacate his order of January 23, 1992, and issue a writ compelling respondent to enter an order that permits relators to depose Rev. Shirl and question him regarding what Mrs. Schnepel told him about her husband's care and treatment at Memorial Northwest Hospital. In the alternative, relators seek an order remanding the case to respondent and directing him to question Rev. Shirl in camera, based on relators' written questions, so that respondent can determine whether the testimony falls within the clergycommunicant privilege. Relators did not address the privilege afforded the communication under rule 403.
The threshold issue before this Court is whether relator clearly abused his discretion in disallowing discovery of Mrs. Schnepel's conversations with Rev. Shirl. See Owens-Corning Fiberglas Corp. v. Caldwell, 818 S.W.2d 749, 752 (Tex.1991). Based on the record before this Court and the discussion that follows, we hold that relator did not clearly abuse his discretion in refusing to allow Rev. Shirl to testify about Mrs. Schnepel's communications to him. Walker v. Packer, 827 S.W.2d 833, 839-840 (Tex.1992). On this basis, we deny the writ of mandamus.
Rule 505: Clergy-Communicant Privilege
In 1967, the Texas Legislature recognized a clergyman-penitent privilege by enacting article 3715a of the Texas Revised Civil Statutes.[1] Article 3715a provided:
No ordained minister, priest, rabbi or duly accredited Christian Science practitioner of an established church or religious organization shall be required to testify in any action, suit, or proceeding, concerning any information which may have been confidentially communicated to him in his professional capacity under such circumstances that to disclose the information would violate a sacred or moral trust, when the giving of such testimony is objected to by the communicant; provided, however, that the presiding judge in any trial may compel such disclosure if in his opinion the same is necessary to a proper administration of justice.
Article 3715a vested a trial court judge with broad authority to compel disclosure of a communication. In 1983, article 3715a was repealed and, in its place, the supreme court promulgated rule 505 of the Texas Rules of Evidence, effective September 1, 1983. Rule 505 provides for a clergy-communicant privilege, as follows:
(a) Definitions. As used in this rule:
(1) A "clergyman" is a minister, priest, rabbi, accredited Christian Science Practitioner, or other similar functionary of a religious organization or an individual reasonably believed so to be by the person consulting him.
(2) A communication is "confidential" if made privately and not intended for further disclosure except to other persons present in furtherance of the purpose of the communication.
(b) General Rule of Privilege. A person has a privilege to refuse to disclose and to prevent another from disclosing the confidential communication by the person *685 to a clergyman in his professional character as spiritual advisor.
(c) Who May Claim the Privilege. The privilege may be claimed by the person, by his guardian or conservator, or by his personal representative if he is deceased. The person who was the clergyman at the time of the communication is presumed to have authority to claim the privilege but only on behalf of the communicant.
Tex.R.Civ.Evid. 505. The rule does not contain the language of former article 3715a that allowed a trial court discretion to compel disclosure. Rule 505 also grants to the communicator the right to refuse to disclose and to prevent the clergyman from disclosing the communication. Id. at 505(c). Thus, the privilege attaches when a person makes a communication with a reasonable expectation of confidentiality to a member of the clergy acting in his or her professional or spiritual capacity.
We have not located Texas cases that construe this rule. Nor have we located cases from other jurisdictions that involve a member of the clergy who is willing to disclose, rather than keep confidential, communications of a communicant. Further, members of the clergy in other cases were not employees of a party defendant, as is Rev. Shirl. We, therefore, address relators' contentions as a case of first impression.

Relators' Arguments Regarding the Privilege
1. Conversations between the chaplain, Reverend Shirl, and the plaintiff, Betty Schnepel, took place in front of other persons, so that any privilege was waived.
Texas Rule of Civil Evidence 505 provides, in pertinent part: "A person has a privilege to refuse to disclose and to prevent another from disclosing a confidential communication by the person to a clergyman in his professional character as spiritual adviser." Tex.R.Civ.Evid. 505(b). "A communication is `confidential' if made privately and not intended for further disclosure except to other persons present in furtherance of the purpose of the communication." Id. at 505(a)(2) (emphasis added).
Rule 505(a)(2) contemplates that individuals other than a chaplain may be present at the time the confidential communications are made. In the present case, both a surgeon, Dr. Harberg, and the director of nurses were intermittently present while Mrs. Schnepel was communicating with the chaplain. The director of nurses was the individual who called for the chaplain's assistance, as she felt that the condition of Mrs. Schnepel's husband was grave and that the family needed spiritual assistance. It is difficult to conceptualize a hospital setting that affords complete privacy to a chaplain and a communicant in circumstances where a family member is undergoing surgery. Common experience tells us that, more often than not, the chaplain will be assisting the family by affording company and comfort in the waiting room of a surgical suite, recovery room, or intensive care unit. Various hospital personnel and physicians are periodically bringing news of what is transpiring. Often, these personnel are also explaining, encouraging, or comforting the family. Family members of other patients are present. If this Court were to decide that the presence of the surgeon and of the director of nurses waived the privilege, hospitals would need to furnish clergy-communicant conference facilities outside every waiting room. Such a narrow interpretation of rule 505 was not intended, especially where the rule expressly acknowledges that others may be present while the communications are made. See In re Grand Jury Investigation, 918 F.2d 374, 385-86 (3d Cir.1990); Scott v. Hammock, 133 F.R.D. 610, 616 (D. Utah C.D.1990).
2. This is a medical malpractice case in which the testimony concerns the care and treatment of the deceased and not matters of a confidential or spiritual nature. Therefore, the clergy communication privilege does not apply.
An individual may invoke a privilege regardless of the nature of the underlying proceeding. See, e.g., Pagano v. Hadley, *686 100 F.R.D. 758, 761 (D.Del.1984) (fundamental fairness does not require that anyone filing a defamation claim be deemed to have waived his or her priest-penitent privilege).
3. The alleged delay of the deceased's surgery and the reason for the delay is the crucial issue in the case.
Relators seek to elicit the testimony of the chaplain that the plaintiff told him that she wanted her husband transferred to another hospital for surgery. They contend that this testimony is necessary to impeach her position that the delay was caused by the physician-defendants. Relators state, "In her deposition, Mrs. Schnepel denied having said that she wanted her husband transferred to another hospital for surgery."
In the order signed on January 23, 1992, respondent held that the matters about which the chaplain intended to testify were within the scope of the clergy-communicant privilege of rule 505. He ordered that the plaintiffs' objections based on privilege be sustained both under rules 403 and 505.
Relators are free to question any other individuals about what Mrs. Schnepel said to them. This would include the treating physicians and any other hospital personnel, including the director of nurses. The only communications afforded the privilege under 505 would be those made by Mrs. Schnepel to the chaplain. Tex.R.Civ.Evid. 505(b). It would be highly unusual for Mrs. Schnepel to have made her statements regarding consent for treatment of her husband only to the chaplain. In most instances where a family member is either withholding or granting consent, the treating physician is present to disclose risks and benefits of a procedure and to obtain the individual's informed consent. See Nevauex v. Park Place Hosp., 656 S.W.2d 923, 925 (Tex.App.Beaumont 1983, writ ref'd n.r.e.). Sometimes, hospital personnel act in the stead of the physician; however, a chaplain is normally not the individual who obtains information about consent to medical treatment. In the record before this Court are excerpts from the deposition of Dr. Nicholson, a relator in the present proceeding. Dr. Nicholson testified that the family preferred a transfer to another hospital.
4. Plaintiffs are claiming that they sustained mental anguish as the result of relators' delay in providing medical treatment to the deceased; therefore, plaintiffs cannot make an offensive use of the clergy communication privilege to prevent relators from learning whether plaintiffs' alleged mental anguish was caused by relators' or by plaintiffs' own conduct, which delayed the deceased's medical treatment and surgery.
Relators seem to be asking this Court to engraft an express, written exception found in the physician-patient privilege onto the clergy-communicant privilege. In contrast to the clergy-communicant privilege, the physician-patient privilege, Tex. R.Civ.Evid. 509, expressly provides exceptions to the privilege in court proceedings, "when the proceedings are brought by the patient against a professional, including but not limited to malpractice proceedings," and "as to a communication or record relevant to an issue of the physical, mental or emotional condition of a patient in any proceeding in which any party relies upon the condition as a part of the party's claim or defense." Id. at 509(d)(1), (4). No comparable exception is set forth in rule 505.
In fact, no exceptions to the privilege are set forth in rule 505. Rule 505 bears no relationship to the attorney-client, Tex. R.Civ.Evid. 503, physician-patient, Tex. R.Civ.Evid. 509, or mental health professional-patient, Tex.R.Civ.Evid. 510, privileges, all of which set forth specific exceptions. In particular, the attorney-client privilege, Tex.R.Civ.Evid. 503, focuses, as does the dissenting opinion, on the nature of the communication. Rule 505 makes no reference to the content of the communication; rather, the rule focuses on the counseling opportunity. The rule is intended to *687 shroud a confidence of a communicant in the privilege.

Other Considerations
a. A member of the clergy should not have the opportunity to determine what aspects of a counseling opportunity are not privileged.
Relators take the position that Rev. Shirl should be able to determine what communications Mrs. Schnepel made to him while he acted in his capacity as spiritual advisor to her, and what communications she made that merely concerned her husband's treatment. We hold this position to be unacceptable. First, we note that only the trial court is empowered to make this distinction, if any should be made. Second, such a conclusion would be tantamount to allowing all conversations that individuals have on clergy-communicant counseling occasions to be dissected and partitioned into categories. Rule 505 would be eviscerated by such a result.
Picture the following scene: the chaplain is called by the director of nurses to counsel a family that faces the imminent loss of a loved one. In the course of his duties, the chaplain hears comments by the spouse of the patient, who is dying on the operating table, about a range of emotions, thoughts, and reflections. If this Court were to hold that the privilege does not apply, to the extent that anything is divulged to the chaplain about the care and treatment of the patient, the reason for the chaplain's presence would be a nullity. Realities of such a situation do not allow such a result. Persons facing crisis decisions regarding a loved one should not be required to be guarded in their disclosures to a spiritual advisor. Regardless of the nature of the communication, the clergyman is "acting in his professional character as a spiritual adviser." Tex.R.Civ.Evid. 505(b). We hold that rule 505 clearly affords Mrs. Schnepel a privilege in the present case. This privilege belongs to her, not to Rev. Shirl. See De'udy v. De'udy, 130 Misc.2d 168, 495 N.Y.S.2d 616, 617 (N.Y.Sup.Ct.1985).
b. The chaplain should not be allowed to wear two hats and switch roles from hospital employee to spiritual advisor, depending on the nature of the communication.
Reverend Shirl is an employee of the hospital, which is a named defendant in the underlying lawsuit. As such, there is a clear potential for conflict of interest regarding his testimony in the case. Further, because most hospitals employ their chaplains, this Court's ruling in favor of relators' position would have far-reaching consequences: any individual who is counseled by a hospital chaplain would be subject to the same possibility of disclosure of information that rule 505's clergy communication privilege clearly intended to remain confidential.
We note that, contrary to the assertion set forth in the dissent, the fact that the hospital summoned Rev. Shirl has no bearing whatsoever on the fact that Mrs. Schnepel's communications to Rev. Shirl were made to him in his capacity as a spiritual advisor and were made "privately and not intended for further disclosure except to other persons present in furtherance of the purpose of the communication." Tex.R.Civ.Evid. 505(a)(2). The rule does not require that the communicant be the individual who seeks, summons, or solicits the presence of the clergy. Mrs. Schnepel was entitled to expect that her communications to Rev. Shirl would be confidential, based on Rev. Shirl's representations about his status as a chaplain and his availability to serve her in his spiritual capacity. During his deposition, Rev. Shirl stated that he provides the people he counsels with a card that states he is a clergyman and introduces himself as the hospital chaplain. He testified that the purpose of his visit is for comfort and guidance and spiritual counseling and "listening and helping the family to get out whatever is on their mind." In her affidavit submitted to this Court and made a part of the record in this proceeding, Mrs. Schnepel stated that she believed Rev. Shirl was a clergyman and that her communication to him was confidential.

*688 Fundamental Prerequisites for the Privilege against Disclosure
In determining whether a clergy communication privilege exists in the present case, we weigh Dean Wigmore's four fundamental prerequisites for a privilege against the disclosure of communications:
(1) The communications must originate in a confidence that they will not be disclosed.
(2) This element of confidentiality must be essential to the full and satisfactory maintenance of the relation between the parties.
(3) The relation must be one which in the opinion of the community ought to be sedulously fostered.

(4) The injury that would inure to the relation by the disclosure of the communications must be greater than the benefit thereby gained for the correct disposal of litigation.
8 Wigmore on Evidence § 2285 (McNaughton rev. 1961) (footnote omitted) (emphasis in original); see In re Grand Jury Investigation, 918 F.2d at 383-84. Finding that these fundamental prerequisites have been met in the instant case, we decline to order respondent to vacate his order regarding Rev. Shirl's disclosure of Mrs. Schnepel's confidential communications.
In summary, we hold that, based on the application of the facts of this case to the requirements set forth in rule 505, Mrs. Schnepel's conversation with Rev. Shirl is privileged. Accordingly, we deny the writ of mandamus.
O'CONNOR, J., dissents and files an opinion.
O'CONNOR, Justice, dissenting.
The majority holds that any communication made to a cleric is privileged. I disagree.
In the underlying suit, a medical malpractice case, the Schnepels (Plaintiffs) allege that Heidi Nicholson, M.D., and Edward M. Stephens, M.D. (Defendants), were negligent in delaying the treatment of Mr. Schnepel in that they failed to timely call a surgeon, which delay caused Mr. Schnepel's premature death.
During discovery, the Plaintiffs noticed the deposition of Rev. Shirl, the chaplain employed by Memorial Northwest Hospital (Hospital). The Hospital is not a party to this mandamus, but is a party in the underlying suit. During that deposition, Rev. Shirl testified that he spoke with Mrs. Schnepel alone and while others were present. When Rev. Shirl was asked about his conversation with Mrs. Schnepel, the Plaintiffs invoked the clergy privilege in Tex.R.Civ.Evid. 505. Reverend Shirl stated in his deposition that he was not going to testify about matters that were privileged and that the matters he was going to testify about fell outside the confidential clergy-communication privilege. Reverend Shirl said he would testify about what Mrs. Schnepel told him about her husband's treatment when he was admitted to the Hospital. He also said the information he has is pertinent to Mrs. Schnepel's claim that she was not told about her husband's treatment. At the deposition, Rev. Shirl produced a copy of the Hospital's policy regarding the clergy privilege. The Hospital's policy provides that a communication is privileged when the person is seeking spiritual advice or counsel.
To prevent Rev. Shirl from testifying at his deposition, the Plaintiffs' counsel threatened to sue Rev. Shirl individually and Memorial Hospital System, his employer, for an intentional tort and to seek exemplary damages. Reverend Shirl did not testify, and the Defendants sought a ruling from the trial court on the privilege. In the order signed on January 23, 1992, the trial court sustained the Plaintiffs' objections based on privilege and held the matters about which the chaplain intended to testify were within the scope of the clergycommunicant privilege of rule 505.
The Defendants want Rev. Shirl to testify that Mrs. Schnepel told him she wanted her husband transferred to another hospital for surgery. The Defendants contend this testimony is necessary to impeach Mrs. Schnepel on her contention that the Defendants caused the delay in treatment. In *689 their application for mandamus, the Defendants state, "In her deposition, Mrs. Schnepel denied having said that she wanted her husband transferred to another hospital for surgery." On this issue, the Defendants contend Rev. Shirl should be permitted to testify.

Adequate remedy at law
The first issue in this mandamus is whether there is an adequate remedy at law for the matter sought to be corrected by mandamus. The majority refuses to address the issue of adequate remedy at law, as required by Walker v. Packer, 827 S.W.2d 833, 840 (Tex.1992). Before reaching the merits of the mandamus, the majority should address the issue of adequate remedy by appeal.
I would hold that under the recently articulated test in Walker, the Defendants do not have an adequate remedy at law. One of the situations described in Walker that will justify a mandamus is where the trial court disallows discovery, and the missing discovery cannot be made part of the appellate record. Id. at 843-844. In such a case, the supreme court has held mandamus may be appropriate because the remedy by appeal is inadequate. Here, when the Defendants attempted to take the deposition of Rev. Shirl, the Plaintiffs threatened to sue the Hospital and Rev. Shirl individually for an intentional tort and seek exemplary damages. Thus, without the resolution of this matter by mandamus, the appellate court will not have an adequate record on appeal.

Rule 505: Clergy Privilege
The second issue in this mandamus is whether Tex.R.Civ.Evid. 505 precludes disclosure of the communication made by Mrs. Schnepel to Rev. Shirl. As stated by the majority, there are no Texas cases interpreting rule 505. Thus, we should look to Texas cases interpreting other privileges and apply the holdings by analogy, and look to the cases interpreting the clergy privilege in other jurisdictions.
The party asserting a privilege from discovery has the burden to produce evidence about the applicability of the privilege to the communication. Giffin v. Smith, 688 S.W.2d 112, 114 (Tex.1985) (attorney-client privilege). In the context of the attorneyclient privilege, this Court has held that before a communication to an attorney is considered protected, the party asserting the privilege must show that the communication (1) was made by a client seeking legal advice; (2) the client sought legal advice from the lawyer in his or her capacity as a lawyer; (3) the communication related to the purposes for which the advice is sought; and (4) the client intended the communication to be confidential and secret. Boring & Tunneling Co. v. Salazar, 782 S.W.2d 284, 289 (Tex.App.Houston [1st Dist.] 1989, orig. proceeding).
By analogy, in the context of the clergy privilege, this Court should hold that before a communication to a minister is considered privileged, the party asserting the privilege must establish (1) the communication was made to a minister, (2) in his or her spiritual and professional capacity, and (3) with the expectation of confidentiality. Tex.R.Civ.Evid. 505; see, e.g., In re Grand Jury Investigation, 918 F.2d 374, 384 (3d Cir.1990); People v. Edwards, 203 Cal. App.3d 1358, 248 Cal.Rptr. 53, 56 (1988);[1]Rivers v. Rivers, 292 S.C. 21, 354 S.E.2d 784, 787 (Ct.App.1987);[2] Annotation, Cornmunication *690 to Clergyman as Privileged, 71 A.L.R.3d 794 (1976). Of the three elements, the Plaintiffs can satisfy only one: that Rev. Shirl is a minister. Because they cannot satisfy the other two, the Plaintiffs' claim of privilege should be denied.
1. Communication was secular, not spiritual
Mrs. Schnepel, in discussing her husband's treatment with Rev. Shirl, did not talk with Rev. Shirl in his capacity as a spiritual advisor. To be afforded protection from disclosure under rule 505, a communication to a minister must be in his professional capacity as a spiritual adviser.
Rule 505 provides: "A person has a privilege to refuse to disclose and to prevent another from disclosing a confidential communication by the person to a clergyman in his professional character as spiritual adviser." Tex.R.Civ.Evid. 505(b) (emphasis added). The Plaintiffs' burden, therefore, was to demonstrate that the communication made to the minister was made to him in "his professional character as spiritual adviser." The Plaintiffs are attempting to prevent disclosure, not of a communication made to a minister in the role of spiritual advisor, but of statements made about Mrs. Schnepel's husband's medical treatment.
It is clear that Mrs. Schnepel did not seek Rev. Shirl for spiritual advice; the hospital staff asked him to attend to Mrs. Schnepel. Nothing in Mrs. Schnepel's pleadings or response to the discovery motions indicates that she considered Rev. Shirl her spiritual advisor from whom she wanted spiritual advice. Mrs. Schnepel seeks to exclude his testimony simply because he is a minister. Because Mrs. Schnepel's statements to Rev. Shirl were not motivated by religious or spiritual considerations, they were not made to him in the course of his duties as a minister. The mere fact that a communication was made to a minister is not enough to invoke the privilege. See United States v. Gordon, 655 F.2d 478, 486 (2d Cir.1981) (the testimony of a priest was admissible where the communication related to business relationships, not spiritual matters); United States v. Wells, 446 F.2d 2, 4 (2d Cir.1971) (a letter to a priest was not privileged in the absence of evidence that the purpose was to obtain religious or other ministration).
In Christensen v. Pestorious, 189 Minn. 548, 250 N.W. 363, 365 (1933), a minister was permitted to testify about a statement made by a party in the hospital, as here. In Christensen, the defendant, the defendant's daughter, and the plaintiff's intestate were in an automobile, driven by the defendant, that collided with a train. In the hospital on the minister's visit to the defendant's daughter, she told him that immediately before the collision, the plaintiff's intestate called out, "the train." The court permitted the minister to testify about the communication, holding that the defendant's daughter had not asked for spiritual advice or comfort and the communication was merely the ordinary description of an occurrence. See also Masquat v. Maguire, 638 P.2d 1105, 1106 (Okla.1981) (a hospital employee's conversation with nun about employee's pending malpractice litigation was not privileged).
Statements made to a minister, unless made to the minister for spiritual guidance, are not privileged. By analogy, if a person makes a communication to a lawyer on a matter not related to legal advice, that communication is not considered to be privileged. See, e.g., Sterling Drilling Co. v. Spector, 761 S.W.2d 74, 76 (Tex.App.San Antonio 1988, orig. proceeding) (witness statements given to a lawyer were not protected under the lawyer-client privilege). Here, Mrs. Schnepel, who was not seeking spiritual advice, cannot claim the privilege.
Mrs. Schnepel's statements about her husband's medical treatment cannot be exempted from discovery under the clergy privilege.
2. The communication was not confidential
Mrs. Schnepel, in discussing her husband's treatment with Rev. Shirl, did not make a confidential communication to Rev. *691 Shirl. Before a communication may be privileged, the communication must have been intended to be confidential. Rule 505 requires that the communication be made privately and not intended for further disclosure. Here, Mrs. Schnepel's communication to Rev. Shirl about her husband's treatment was merely the discussion of the events occurring during her husband's treatment. Mrs. Schnepel did not make the communication privately, and there is no evidence she intended to restrict its dissemination.
Under rule 505, a communication is defined as "confidential" if made privately and not intended for disclosure except to other persons present in furtherance of the purpose of the communication. Tex.R.Civ. Evid. 505(a)(2). The communication made by Mrs. Schnepel about her husband's treatment was not intended to be confidential. The communications made by Mrs. Schnepel were made in front of other persons whose presence was not essential to any spiritual counseling. The presence of the nurses and the doctors during Mrs. Schnepel's conversation with Rev. Shirl, preclude any finding that the conversation was intended to be a confidential communication to a cleric. See, e.g., Ledisco Financial Serv., Inc. v. Viracola, 533 S.W.2d 951, 959 (Tex.AppTexarkana 1976, no writ) (no attorney-client privilege attaches to a communication to a lawyer in the presence of a third person who is not an agent or representative of the lawyer).
The majority holds that rule 505 contemplates that others may be present at the time the confidential communication is made. I agree so far. But, if other persons were present, the person seeking to exclude the evidence must prove they were present in furtherance of the purpose of the confidential spiritual communication. Mrs. Schnepel offered no such proof.
The majority suggests that if this Court were to decide that Mrs. Schnepel waived the privilege because medical staff were present, hospitals would need to furnish clergy-communicant conference facilities outside every waiting room. I disagree. If a person is seeking spiritual advice from a chaplain, the conversation may be temporarily suspended when a nurse or doctor enters the room. To continue discussing a spiritual matter in the presence of strangers violates one of the requirements of a confidential communication.
3. Offensive use of the clergy privilege
The Defendants contend the Plaintiffs are using the privilege offensively to prevent relators from learning whether the Plaintiffs' mental anguish was caused by the Defendants or by the Plaintiffs' own conduct. A party may not "use one hand to seek affirmative relief and with the other hand lower an iron curtain of silence" around the facts of the case. Ginsberg v. Fifth Court of Appeals, 686 S.W.2d 105, 108 (Tex. 1985). I agree. In Ginsberg, the supreme court said the plaintiff could not assert the psychotherapist privilege to exclude information that would assist the defendant.
The Plaintiffs are trying to foreclose the discovery of facts of the case under the guise of the clergy privilege.

Summary
There is no evidence that the matters about which Rev. Shirl intends to testify are within the scope of the clergy-communicant privilege. One of the reasons the majority holds that the communication should not be disclosed is that it finds it unseemly that a minister would volunteer to speak about a communication that is detrimental to the person making the communication and favors the minister's employer, the Hospital. That is not the issue. If the communication is not privileged, it is within the reach of discovery.
I would hold the trial court abused its discretion in refusing to allow Rev. Shirl to testify about Mrs. Schnepel's communications to him. Mrs. Schnepel did not carry her burden to prove that she was entitled to the clergy privilege. See Giffin, 688 S.W.2d at 114.
NOTES
[1] Act of June 12, 1967, 60th Leg., R.S., ch. 435, § 1, 1967 Tex.Gen.Laws 1005, repealed by order of the Texas Supreme Court, dated Nov. 23, 1982, effective Sept. 1, 1983, adopting the Texas Rules of Evidence. See Act of May 15, 1939, 46th Leg., R.S., ch. 25, 1939 Tex.Gen.Laws 201, 201-202 (now codified at Tex.Gov't Code Ann. §§ 22.003, 22.004 (Vernon 1988)).
[1] Some cases identify three elements to the clergy privilege. See, e.g., In re Grand Jury Investigation, 918 F.2d at 384; Edwards, 248 Cal.Rptr. at 56. In Edwards, for example, the privilege is considered to have the following elements: (1) the communication must be intended to be confidential; (2) it must be made to a member of the clergy who by his or her religious discipline is authorized to hear such communications; and (3) such clergy had a duty under the discipline of the religious organization to keep such communicationssecret. Edwards, 248 Cal.Rptr. at 56.
[2] Other courts identify four elements to the clergy privilege. In Rivers, for example, the privilege is considered to have the following elements: (1) the communication must be confidential; (2) it must be disclosed to an ordained minister, priest, or rabbi; (3) it must be entrusted to the minister in his or her professional capacity; and (4) it must be one that is necessary to enable the minister to discharge his or functions of the office. Rivers, 354 S.E.2d at 787.