Opinion issued November 10, 2010



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-09-00939-CR

NO. 01-09-00940-CR

———————————

Rogelio Gutierrez, Appellant

V.

The State of
TEXAS, Appellee



 



 

On Appeal from the 178th District Court  

Harris County, Texas



Trial Court Case No. 1175222, 1175223

 



 

MEMORANDUM OPINION

          A
jury convicted Rogelio Gutierrez of sexual assault of a child and aggravated
sexual assault of a child, and the trial court assessed his punishment at fifty
years’ confinement.  See Tex. Penal Code Ann. § 22.011 & 22.021 (Vernon Supp.  2010). 
On appeal, Gutierrez contends that the trial court erred
by admitting testimony
about a privileged communication between a priest and himself and unduly
prejudicial testimony from a forensic examiner who interviewed the complainant.  We hold that the trial court did not err
because the communication between Gutierrez and the priest was not privileged,
and the complained-of testimony was not unduly prejudicial. We therefore
affirm. 

Background

          In June 2007, the complainant, R.G., Gutierrez’s daughter,
alleged that her father had sexually assaulted her on numerous occasions
beginning when she was eleven years old. 
R.G. testified that, when she was a child, Gutierrez showed her how to
play poker.  If he won the game,
Gutierrez spanked her.  Over time, Gutierrez
 started to rub R.G.’s naked bottom with
his hands.  When she was around eleven
years old, he engaged in anal intercourse with her.  He forced her to have anal intercourse with
him on many occasions while her mother worked at night.  By the time R.G. was thirteen years old,
Gutierrez forced her to engage in vaginal intercourse with him.  Additionally, he put his mouth on her
breasts, bottom, and vagina and forced her to put her hand on his penis.    

          Certain nights, she persuaded him not to have sex with her.  On those nights he would punch or spank her
while he masturbated.  During this abuse,
he tied her hands with pantyhose to a ceiling fan.  Around the age of eighteen, R.G. convinced him
to stop forcing her to have vaginal intercourse with him.  He continued, however, until she was
twenty-three years old, to punch her while he masturbated.

          One evening, R.G. reported the sexual abuse to Father
Michael Minifie, a Catholic priest at her parish.  In response, Father Minifie told R.G. that he
had a duty to contact the police.  He
drove R.G. to a Houston Police Department station, where Officer Flucas interviewed
her about the abuse.  The following day, R.G.
told Gutierrez that she had revealed the abuse to Father Minifie.  Two days after her outcry to the priest, R.G.
also told her mother about the abuse.  That
day, Guitierrez asked R.G. for forgiveness, claiming he was a changed man and
he was good with god.  Similarly, when R.G.’s
mother confronted Gutierrez, he simply asked her for forgiveness.  

          In the next days following R.G.’s outcry, Father Minifie
became concerned because the police had not yet arrested Gutierrez, and he
thought Gutierrez might come on church property, where children were present.  As a result, he contacted the legal
department of the Archdiocese of Galveston and Houston.  Based on their advice, he called Gutierrez.  His purpose was to put Gutierrez on notice
that he, the parish and the archdiocese knew that someone had accused him of
rape and sexual assault.  Further, he
testified that the purpose of the call was not to provide spiritual advice, and
he was not calling in the capacity of a spiritual advisor.  He did not mention R.G. by name and spoke of
the allegations in only general terms. 

          In response, Gutierrez neither confirmed nor denied the
allegations, but told Father Minifie that he was getting help and had gone to
confession with another priest.  He said
he realized what he did, and he was trying to get his life back on track.  He asked Father Minifie twice if he could
meet with him, but Father Minifie declined because he said it would be a conflict
of interest.  Gutierrez responded that he
understood why he could not meet with him. 
Further, he stated that he was reading the Bible and that we needed to
reach down and let the Lord take care of this situation.  He
said, “It hurts, my daughter hurts.”  Lastly, he asked Father Minifie what was going
to happen, and Father Minifie responded that he did not know.  At trial, defense counsel objected to Father
Minifie’s testimony concerning his conversation with Gutierrez on the grounds
that it was a confidential communication to a member of the clergy and that the
probative value of the testimony was substantially outweighed by its prejudicial
effect.  The trial court overruled these
objections.  

          Sometime after her outcry to Father Minifie, R.G. visited
the Children’s Assessement Center, where Aimee McAndrew interviewed her about
the sexual assault allegations.  At
trial, McAndrew testified that R.G. understood the difference between a truth
and a lie.  She said R.G. gave detailed
responses to her questions, and her responses were consistent.  R.G.’s demeanor during the interview was very
serious, reserved and tearful.  Defense
counsel objected to McAndrew’s testimony on the ground that the probative value
of the testimony about her interview with R.G. was substantially outweighed by
its prejudicial effect.  The trial court
overruled this objection.  

Discussion

Clergy
Communication Privilege 

          In his first issue on appeal, Gutierrez
contends that the trial court erred in denying his motion to exclude a privileged
communication.  Specifically, he contends
that admitting Father Minifie's testimony about his phone conversation with Gutierrez
after R.G.’s outcry was improper because Gutierrez’s statements to Father
Minifie were privileged
under Texas Rule of Evidence 505.

          Preliminary questions of
admissibility, including questions concerning the existence of a privilege, are for the trial court.  See Tex
R. Evid. 104(a);
see also McVickers v. State, 874 S.W.2d 662, 664
(Tex. Crim. App. 1993), overruled on other grounds by
Granados v. State, 85 S.W.3d 217 (Tex.
Crim. App. 2002).  When making a privilege
determination, the trial court is afforded broad discretion. See Welch v. State, 908 S.W.2d 258, 264
(Tex. App.—El Paso 1995, no pet.).  We review the trial court's decision under an abuse of discretion
standard, and will reverse a trial court's determination only when “the trial
court applied an erroneous legal standard, or when no reasonable view of the
record could support the trial court's conclusion under the correct law and the
facts viewed in the light most favorable to its legal conclusion .”  Carmona v. State, 947 S.W.2d 661, 664
(Tex. App.—Austin 1997, no pet.) (quoting DuBose v. State, 915 S.W.2d 493, 498
(Tex. Crim. App. 1996)).  Should we determine that the trial court
abused its discretion in admitting such testimony, we conduct a harm analysis
under Rule 44.2(b). Tex. R. App. P. 44.2(b);
Johnson v. State, 43 S.W.3d 1, 4
(Tex. Crim. App. 2001) (erroneous admission or exclusion
of evidence is not reversible error unless it affects substantial right of
defendant; substantial right is affected when error has substantial and
injurious effect or influence in determining the jury's verdict).

          Texas Rule of Evidence 505 provides
that “[a] person has a privilege to refuse to disclose and to prevent another
from disclosing a confidential communication by the person to a member of the
clergy in the member’s professional character as a spiritual advisor.” Tex. R. Evid. 505(b).  “A ‘member of the clergy’ is a minister,
priest, rabbi, accredited Christian Science Practitioner, or other similar
functionary of a religious organization or an individual reasonably believed so
to be by the person consulting with such individual.” Tex. R. Evid. 505(a)(1).  Under the express language of the rule, the
privilege extends only to communications addressed to a clergyman in his
professional capacity as a spiritual advisor, not to every private
communication made to a clergy member. Nicholson v. Wittig, 832 S.W.2d
681, 687 (Tex. App.—Houston [1st Dist.] 1992, no writ).  For example, statements made during a
disciplinary/administrative meeting are not communications made for the purpose
of obtaining spiritual guidance or consolation and do not fall within the scope
of the privilege. Kos v. State, 15 S.W.3d 633, 639–40 (Tex. App.—Dallas
2000, pet. ref’d); Maldonado v. State,
59 S.W.3d 251, 253 (Tex. App.—Corpus Christi 2001, pet. ref’d).

          In Kos,
the Dallas Court of Appeals said that communications between a clergy member
and the defendant were not privileged because the meeting was held for the
specific purpose of obtaining information about sexual abuse allegations. 15
S.W.3d at 639–40.  The court reasoned
that the clergy member wanted to confront the defendant about the charges, the
clergy member initiated the meeting, and the defendant did not seek any advice
at that time on how he could reconcile himself with the church. Id.  In Maldonado, the Corpus Christi Court of
Appeals similarly held that communications during a meeting initiated by a
bishop to confront a subordinate about allegations of his inappropriate
behavior were not privileged because the meeting was administrative in nature.
59 S.W.3d at 253. 

          As
happened in Kos and Maldonado, Father Minifie initiated the
phone conversation with Gutierrez to put him on notice that he, the parish, and
the archdiocese were aware of the sexual assault allegations against him.  Father Minifie’s motive was concern for the
children at his church because the police at that time had not yet arrested Gutierrez.  We hold that the trial court reasonably could
have concluded that the phone conversation was not made to Father Minifie in
his professional character as a spiritual advisor, and was thus not
privileged.  

          In response, Gutierrez argues that although Father Minifie
initiated the conversation for an administrative purpose, the communication is
nontheless privileged because Gutierrez sought spiritual guidance during the phone
call.  But the trial court reasonably
could have concluded that Gutierrez did not expect that his communications
would be confidential because Father Minifie had made it clear that he was not
communicating with him in his professional character as spiritual advisor.  Cf. Wittig,
832 S.W.2d at 687 (finding that woman was entitled to expect her communications
to  clergy person would be confidential,
based on his representations about his status as chaplain and his availability
to serve her in his spiritual capacity). 
At the beginning of the call, Father Minifie notified Gutierrez of his
administrative purpose for the conversation. 
Also, when Gutierrez asked to see him, Father Minifie twice refused,
stating that it would be a conflict of interest.  Finally, although Gutierrez made comments of
a religious nature, Father Minifie did not solicit these comments and did not
respond to them.  

          Further, Gutierrez appeared to understand that Father
Minifie would not communicate with him in his professional character as
spiritual advisor.  When Father Minifie
refused to meet with him, Gutierrez responded that he understood why he could
not.  Also, Gutierrez notified him that
he had already sought spiritual advice from another priest, who had heard his
confession.  We hold that the trial court
did not abuse its discretion in overruling Gutierrez’s privilege objection.  

Rule 403 Objections 

          In his second
and third issues on appeal, Gutierrez contends that the trial court erred in overruling
his objections to parts of Father Minifie’s and Aimee McAndrew’s testimony.  He maintains that the complained-of testimony
violated Texas Rule of
Evidence 403 because it was unduly prejudicial.           

          Standard of Review 

          When the trial court rules on a rule
403 objection, we review the court’s ruling under an abuse of discretion
standard.  State v. Mechler, 153
S.W.3d 435, 439 (Tex. Crim. App. 2005). The test for whether the trial court
abused its discretion is whether the action was arbitrary or unreasonable. Id.
We will not reverse a trial court’s ruling that is within the zone of
reasonable disagreement. Id. at 440. Under Texas Rule of Evidence 401,
evidence is relevant if it has any tendency to make the existence of any fact
of consequence to the determination of the action more or less probable than it
would be without the evidence. Tex. R.
Evid. 401. There is a presumption of admissibility of relevant evidence.
 See Tex. R. Evid. 402; Erazo v. State, 144 S.W.3d 487, 499
(Tex. Crim. App. 2004).  The trial court
still may exclude relevant evidence under Rule 403 “if its probative value is
substantially outweighed by the danger of unfair prejudice, confusion of the
issues, or misleading the jury, or by considerations of undue delay, or
needless presentation of cumulative evidence.”  Tex. R.
Evid. 403.  When a trial court
balances the probative value of the evidence against the danger of unfair
prejudice, a presumption exists that favors the evidence’s probative value. Feldman
v. State, 71 S.W.3d 738, 754–55 (Tex. Crim. App. 2002). 

          The relevant criteria for determining
whether the prejudice of admitting the evidence substantially outweighs its
probative value include the following: (1) the probative value of the evidence;
(2) the potential the evidence has to impress the jury in an irrational but
nevertheless indelible way; (3) the time needed to develop the evidence; and
(4) the proponent’s need for the evidence to prove a fact of consequence.  Mechler, 153 S.W.3d at 440. If the
record reveals one or more of these considerations led to a risk that the probative
value of the evidence was substantially outweighed by the danger of unfair
prejudice, then an appellate court should conclude the trial court abused its
discretion in admitting the evidence. Reese v. State, 33 S.W.3d 238, 241
(Tex. Crim. App. 2000).

          Father Minifie’s Testimony  

          After the trial court overruled Gutierrez’s
clergy privilege objection, Gutierrez objected that Father Minifie’s testimony
about his phone conversation with him violated Texas Rule of Evidence 403.  The trial court overruled this objection. 

          We first examine the probative value of
this evidence. The testimony about the phone conversation is relevant as to
whether Guitierrez
committed the offense.  According to the
testimony, Gutierrez
made a number of statements after Father Minifie informed him of the sexual
assault accusations.  He stated that he was
getting help and that he had come to understand what he did.  Further, he said he went to confession and
talked with another priest.   He also mentioned
that he was trying to get his life back on track and wanted to get right with
the Lord.  Finally, he stated, “It hurts,
my daughter hurts.”  These statements
indicate that Gutierrez was repentant, and a jury could conclude that they show
consciousness of guilt.

          Next, the testimony likely did not impress the jury in an
irrational way.  Rule
403 focuses only on the danger of unfair
prejudice and the tendency to tempt the jury into finding guilt on
grounds apart from proof of the offense charged. Mechler, 153 S.W.3d at
440.  While the testimony was prejudicial
to Gutierrez, it did not tempt the
jury to find him guilty on improper grounds.
 Additionally,
the testimony was brief.  The record of
the trial proceedings was in about three volumes, and the disputed testimony took
up about four pages of those volumes.  Finally,
the State’s need for the testimony was significant because it served to refute Gutierrez’s claim
that R.G. fabricated her sexual assault allegations against her father.  See
Flannery v. State, 676 S.W.2d 369, 370 (Tex. Crim. App. 1984)
(holding that State is entitled to present evidence for rebuttal purposes that
tends to refute defensive theory of accused).  On applying the factors to this case, we find
that the trial court did not abuse its discretion by ruling that Father Minifie’s
testimony about his conversation with Guitierrez did not violate rule 403. 

          Aimee McAndrew’s Testimony


          Gutierrez
also contends that the trial court erred in overruling his rule 403 objection
to the testimony of Aimee McAndrew, who interviewed R.G. at the Children’s
Assessment Center about her sexual assault accusations.  Specifically, Gutierrez argues that the
testimony was irrelevant except to introduce inadmissible “backdoor” hearsay,
which the State relied on in its closing argument.[1]  Because he neither objected to McAndrew’s
testimony on hearsay grounds nor made any objection to complained-of statements
made by the State during its closing argument, Gutierrez did not preserve error
on these issues.  See Tex. R. App. P. 33.1(a); Broxton v. State,
909 S.W.2d 912, 918 (Tex. Crim. App. 1995) (holding that objection stating one
legal theory may not be used to support different legal theory on appeal).  We, therefore, review his 403 objection to McAndrew’s testimony without regard to his
arguments about inadmissible hearsay and statements made by the State during
its closing argument. 

          McAndrew’s testimony was probative as
it served to rebut Gutierrez’s claim that R.G. fabricated her allegations and,
thus, that she was not credible.  First,
the testimony described R.G.’s demeanor when she reported the sexual assault
allegations to the authorities.  McAndrew testified R.G. was very serious,
reserved and tearful during the interview. 
Additionally, she said that R.G. gave detailed responses to her
questions, and her responses were consistent throughout the interview.   Next,
the testimony likely did not impress the jury in an irrational way.  In her testimony, McAndrew discussed only how
she generally conducts her interviews for the Children’s Assessment Center, and
how R.G. behaved during
the interview.  The
testimony did not tempt the jury to find Guitierrez
guilty on improper grounds. See Mechler, 153
S.W.3d at 440. Additionally,
the testimony was brief.  Following
defense counsel’s rule 403 objection, McAndrew’s testimony took up about eleven pages of the trial
transcript.  Finally, the State’s need for the
testimony was not great because Officer Flucas later testified at trial to R.G.’s
demeanor in reporting the offense to the authorities.  Although the need for the evidence was not great,
we find on applying the 403 factors to this case that the trial court did not abuse its
discretion by ruling that McAndrew’s testimony did not violate rule 403.


Conclusion

          We hold that the trial court did not
err in admitting the complained-of evidence because the communication between Gutierrez
and Father
Minifie was not privileged, and the testimony of Father Minifie and McAndrew was not unduly prejudicial. We
therefore affirm the judgment of the trial court.

 

 

                                                          

                                                          Jane Bland

                                                          Justice

 

Panel consists of Justices Keyes,
Higley, and Bland.

Do not publish.  Tex.
R. App. P. 47.2(b).

 











[1]
Guitierrez cites two statements made by the State during closing arguments.
First, the State said, “Two things sometimes I forget to say in closing
argument and things that juries always ask for in these cases, the police
report and the Children’s Assessment Center video are hearsay.  So they are not admissible in a Court of
law.  So I don’t want you going back
there wondering well, we’d like to see a video. 
It’s just not admissible in a Court of law.  So we can’t give it to y’all.”  Later, the State said, “And you heard that
[R.G.] gave Officer Flucas details, and she wrote it in her report.  Don’t you know, ladies and gentlemen, if
those details were anything but consistent that you would have heard about that
from defense attorney?”