0906

Helen Elizabeth RIVERS, Respondent v. Loretta Altman Pinion RIVERS, Appellant.

(354 S. E. (2d) 784)

Court of Appeals

*Kaye Gorenflo Hearn* and *George M Hearn, Jr.*, both of *Stevens, Stevens, Thomas, Hearn & Hearn, P.A.*, Loris, and *Harvey L. Golden*, Columbia, *for appellant.*

*C. Dixon Lee, III*, of *Draine, McLaren & Lee, P.A.*, Columbia, *for respondent.*

Heard Dec. 10, 1986.

Decided March 23, 1987.

GOOLSBY, Judge:

This is an action for alienation of affections and criminal conversation brought by Helen Elizabeth Rivers against Loretta Altman Pinion Rivers. Helen recovered a jury verdict on both causes of action. The trial judge granted Loretta's motion for a new trial *nisi* on the cause of action for alienation of affections unless Helen remitted stated amounts of the actual and punitive damages. He denied Loretta's motion for a new trial *nisi* on the cause of action for criminal conversation. Helen remitted the amounts ordered by the trial judge on the cause of action for alienation of affections. Loretta appeals. We affirm.

The issues are whether the clergyman-penitent privilege applies to communications made to an ordained minister who provided marriage counseling, whether a person can recover at the same time on both a cause of action for alienation of affections and a cause of action for criminal conversation, whether the verdict on each cause of action was excessive, and whether the trial judge erred in denying a motion for a new trial *nisi* on the cause of action for criminal conversation.

Helen married Malcolm R. Rivers on February 28, 1947.

Their marriage ended in divorce on November 3, 1983, nearly 36 years later. Shortly thereafter, on December 17, 1983, Malcolm married Loretta.

This action followed.

Helen alleged in her cause of action for alienation of affections that, while Helen and Malcolm were cohabiting as husband and wife, Loretta "willfully and wrongfully gained the affections" of her husband and "enticed him" away from her and that, as a proximate result of Loretta's alienating the affections of her husband, the marital relationship that she shared with Malcolm was destroyed. Loretta's actions in alienating her husband's affections away from her allegedly damaged Helen in that Loretta's actions served to deprive Helen wrongfully of "the company, society, support, and protection" of her husband and "of the happiness and benefits which she would not have otherwise received" and in that Loretta's actions caused Helen to suffer "great distress of mind, body, and estate."

Helen alleged in her cause of action for criminal conversation that Loretta engaged in sexual intercourse with Malcolm while he was Helen's lawful husband and that this caused the break up of Helen's marriage to Malcolm. Loretta's adulterous intercourse with Malcolm allegedly damaged Helen, "not only in personal reputation, but also in family reputation," wounded and disgraced Helen's feelings, and caused Helen to suffer "damages of mind and estate."

In her answer, Loretta admitted to having sexual intercourse with Malcolm before the divorce was granted; however, she denied that any conduct on her part caused the destruction of Helen's marriage.

At the end of all the testimony, the trial judge raised the question of whether the submission of both a cause of action for alienation of affections and a cause of action for criminal conversation to the jury would allow the plaintiff an opportunity for a double recovery. Nevertheless, the trial judge instructed the jury that it could award separate verdicts on each cause of action and he provided the jury separate verdict forms with which it could do so.

Loretta raised no objection to both causes of action being submitted to the jury. She sought for the first time to require Helen to elect between the two causes of action when

she presented her post-trial motions for judgment notwithstanding the verdict and for a new trial *nisi. See Harper v. Ethridge,* 290 S. C. 112, 121, 348 S. E. (2d) 374, 379 (Ct. App. 1986) (holding that "[i]n many instances, ... the case can go to the jury on all causes of action supported by the evidence at trial, with election required after verdict but before judgment is entered.").

## I.

Loretta first argues that the trial judge abused his discretion in applying the clergyman-penitent privilege to confidential communications made by Helen to her marriage counselor.

Helen testified on direct examination that she and Malcolm received marriage counseling from Dr. Paul Carlson, a psychologist. On cross-examination, she associated him with the Trenholm Road United Methodist Church in Columbia and the church's pastoral counseling service.

Loretta called Dr. Carlson to testify. Dr. Carlson, an ordained Methodist minister holding a doctorate degree in psychotherapy, requested the trial judge to excuse him from testifying as to communications between Helen and himself because he believed these communications were confidential when made. He explained that, while he saw Helen and Malcolm as a therapist, he saw his role "as an ordained clergyman and as a pastoral counselor ... to help mend marriages ..." and that, if he were required to testify concerning his conversations with Helen, "it would be a breach of confidentiality." He further explained that the counseling program was "under the auspices of the church" and was a "service provided by the church for helping persons who [were] having difficulties in their marriages...."

Helen also objected to Dr. Carlson testifying as to all confidential communications between Dr. Carlson and herself. She argued that these communications were privileged under the clergyman-penitent privilege.

The trial judge ruled that all confidential communications made by Helen to Dr. Carlson while they were alone were privileged since Dr. Carlson "was a minister and working as part of a church program...."

Confidential communications made to clergymen were not privileged at common law. *In re Swenson,* 183 Minn. 602, 237

N. W. 589 (1931). In South Carolina, the clergyman-penitent privilege owes its origin to Section 19-11-90 of the South Carolina Code of Laws (1976). This statute provides as follows:

> In any legal or quasi-legal trial, hearing or proceeding before any court, commission or committee no regular or duly ordained minister, priest or rabbi shall be required, in giving testimony, to disclose any confidential communication properly entrusted to him in his professional capacity and necessary and proper to enable him to discharge the functions of his office according to the usual course of practice or discipline of his church or religious body. This prohibition shall not apply to cases where the party in whose favor it is made waives the rights conferred.

Under our statute, then, there are four conditions that must be established before the clergyman-penitent privilege applies. There must be (1) a confidential communication; (2) the confidential communication must be disclosed to a regular or duly ordained minister, priest, or rabbi; (3) the confidential communication must be entrusted to the clergyman in his professional capacity; and (4) the confidential communication must be one that is necessary and proper to enable the clergyman to discharge the functions of his office according to the usual course of practice or discipline of his church or religious body.

Like the attorney-client privilege [*State v. Love*, 275 S. C. 55, 271 S. E. (2d) 110, *cert. denied*, 449 U. S. 901, 101 S. Ct. 272, 66 L. Ed. (2d) 131 (1980) ], the burden of showing the facts required to establish the clergyman-penitent privilege rests on the party objecting to the disclosure of the communication. Not every communication made to a clergyman is privileged, of course, *In the Matter of Fuhrer*, 100 Misc. (2d) 315, 419 N. Y. S. (2d) 426 (1979). The question of whether a communication is privileged is a question for the trial judge to decide, after making a preliminary inquiry into the surrounding facts and circumstances leading up to the making of the communication. *In re Swenson, supra.* The determination by the trial judge of the question of privilege is conclusive, in the absence of an abuse of discretion. *State*

*v. Franklin,* 267 S. C. 240, 226 S. E. (2d) 896 (1976).

Other states have considered the question of whether communications made to a clergyman in the course of marriage counseling are privileged. They have reached different conclusions. *See* Annot., 71 A. L. R. (3d) 794 (1976).

Clearly, the first two elements required by Section 19-11-90 to assert the privilege successfully were established by the evidence. Dr. Carlson considered Helen's communications to him to be confidential, as do we. *See Kruglikov v. Kruglikov,* 29 Misc. (2d) 17, 217 N. Y. S. (2d) 845 (1961), *appeal dismissed,* 16 A. D. (2d) 735, 226 N. Y. S. (2d) 931 (1962) (disclosures by a husband and wife to a rabbi with a view to reconciling and restoring their marriage held privileged). And there is no question but that Dr. Carlson is, as he represented himself to be, a protestant minister. The more difficult question is whether the other two elements were also established.

Regarding the third element, we hold that the confidential communications made by Helen to Dr. Carlson during the course of marriage counseling were made to him in his professional capacity as a clergyman. Decisions that a husband or a wife makes concerning his or her marriage can, and often do, involve spiritual and moral considerations. It is presumably for this reason that the Trenholm Road United Methodist Church permitted Dr. Carlson, under its auspices, to provide marriage counseling services to those experiencing marital difficulties. *See In re Verplank,* 329 F. Supp. 433 (C. D. Cal. 1971) (because draft registrants must make decisions involving spiritual and moral considerations, court held that draft counseling services rendered to them by a chaplain were performed in the course of the chaplain's function as a clergyman).

We realize that to some extent Dr. Carlson in counseling Helen acted as a therapist and not as a clergyman. Whether he acted to a greater extent as a therapist or as a clergyman would be difficult, if not impossible, for us to determine. We therefore conclude that because of the practical difficulty in distinguishing between the counseling Helen received from Dr. Carlson as a therapist and between the counseling she received from him as a clergyman, all her confidential communications to Dr. Carlson are deemed to have been made to

him in his professional capacity as a clergyman. *See State v. Jackson,* 77 N. C. App. 832, 336 S. E. (2d) 437 (1985) (where a defendant confided in his aunt who was also a minister and it was impossible to determine to what extent he confided in her as a relative and to what extent as a minister, the court held she was acting at least in part as a minister and therefore his statements to her were privileged).

Concerning the fourth element, confidential communications by Helen to Dr. Carlson were necessary and proper to enable Dr. Carlson, as an ordained Methodist minister, to discharge a function of his office according to the usual course of practice of his church.

One function of an ordained Methodist minister, the evidence shows, is to assist married couples in attempting to solve their marital problems. To this end, the Trenholm Road United Methodist Church sponsors, apparently as part of an outreach program, a marriage counseling service that is available to anyone, whether a church member or not. In so doing, the church made marriage counseling a practice of the church. It was in the usual course of this church practice that Helen communicated confidentially with Dr. Carlson.

The trial judge, therefore, did not abuse his discretion in applying the privilege. *See Pardie v. Pardie,* 158 N. W. (2d) 641 (Iowa 1968) (trial court improperly admitted testimony from a minister regarding statements made by the wife who, with her husband, consulted the minister about family problems).

## II.

Loretta next argues that the trial judge erred in failing to require Helen to elect between her cause of action for alienation of affections and her cause of action for criminal conversation. She maintains that to allow Helen to recover on both causes of action would permit Helen to recover twice for the same injury. This is not necessarily true and has not been shown to be true here.

The causes of action for alienation of affections and criminal conversation are closely related, the gist of both being the loss of consortium. *Valentine v. Pollak,* 95 Conn. 556, 111 A. 869 (1920). Indeed, the Wisconsin Supreme Court described the two causes of action as "twin causes of action."

*Schneider v. Mistele*, 39 Wis. (2d) 137, 140, 158 N. W. (2d) 383, 384 (1968). But, as that court also pointed out, "they are not identical twins, certainly not Siamese twins." *Id.* at 140, 158 N. W. (2d) at 384-85. The reason they are not identical twins is that they are separate causes of action. *Id.; Darnell v. McNichols*, 22 Tenn. App. 287, 122 S. W. (2d) 808 (1938). As separate causes of action, each has its own peculiar elements.

The elements required to prove a cause of action for ■■ alienation of affections are (1) wrongful conduct on the part of the defendant, (2) the plaintiff's loss of affection or consortium of the spouse, and (3) a causal connection between the defendant's conduct and the plaintiff's loss. *Bishop v. Glazener*, 245 N. C. 592, 96 S. E. (2d) 870 (1957); 41 Am. Jur. (2d) *Husband and Wife* § 466 at 393 (1968). On the other hand, the elements of a cause of action for criminal conversation are (1) an actual marriage between the spouses and (2) sexual intercourse between the guilty spouse and the defendant during coverture. *Fennell v. Littlejohn*, 240 S. C. 289, 125 S. E. (2d) 408 (1962); 42 C. J. S. *Husband and Wife* § 698b at 353 (1944).

The cause of action for alienation of affections does ■■ not necessarily involve adulterous intercourse, although it may. *Fennell v. Littlejohn, supra.* Alienation of affections is not a necessary element of the tort of criminal conversation but may be proved by the plaintiff in aggravation of damages. *Schneider v. Mistele, supra;* 42 C. J. S. *Husband and Wife* § 698b at 353 (1944).

The losses for which a plaintiff may recover in an ■■ action for alienation of affections, however, are similar to those for which a plaintiff may recover in an action for criminal conversation. *See* 41 Am. Jur. (2d) *Husband and Wife*, § 482 at 407 and 408 (1968) (A plaintiff prosecuting either action may recover "for all direct and proximate losses occasioned by the tort, including loss of love and consortium, and may recover for any physical pain, mental agony, lacerated feelings, wounded sensibilities ... or the like."). In an action for criminal conversation, however, a plaintiff may recover substantial damages for the adultery itself, independent of the loss of consortium. 42 C. J. S. *Husband and Wife* § 706 at 361 (1975). Although loss

of consortium is not necessarily an element of damages in an action for criminal conversation, damages for the loss of a plaintiff's right of consortium resulting from the adultery may be added as compensation if properly pled by the plaintiff. *Maggay v. Nikitko*, 117 Conn. 206, 167 A. 816 (1933).

Where a plaintiff alleges a cause of action for alienation of affections and a cause of action for criminal conversation and alleges in both causes of action a particular loss occasioned by the tort, the plaintiff, upon proper proof, is entitled to recover for the loss under each cause of action. *Id.* In such a case, however, the trial judge should caution the jury against giving damages under both causes of action for the same loss and should instruct the jury that it should not allow the plaintiff to recover twice for the same thing. *Id.* For example, in a case where the plaintiff alleges a loss of consortium in counts charging the defendant with both alienation of affections and criminal conversation,

> [i]f the plaintiff had been completely deprived of that right before any adultery took place, he could not recover damages for loss of consortium under the [cause of action for criminal conversation], but, if his loss of it was due in part to wrongful acts of the defendant alleged in the [cause of action for alienation of affections] and in part to the adultery, he would be entitled to recover under each compensation for the loss due to the acts alleged in it.

117 Conn. at 213, 167 A. at 818; *see Sebastian v. Kluttz*, 6 N. C. App. 201, 170 S. E. (2d) 104 (1969) (wherein the court held that because the causes of action for alienation of affections and criminal conversation and the elements of damages in the case were so connected and interwined, only one issue of actual damages and one issue of punitive damages should have been submitted to the jury); *cf. Gross v. Ledford*, 190 Ky. 526, 228 S. W. 24 (1921) (wherein the court held that a cause of action for criminal conversation embraced the cause of action for alienation of affections since they were of the same character and since the damages and the basis of their recovery were the same).

As we read it, Helen's complaint claims damages for loss

of consortium only under her cause of action for alienation of affections. The term "consortium" usually includes, when applied to actions for alienation of affections, "the right of either spouse to the affection, society, assistance, companionship, and comfort of the other," a right to which, as we pointed out above, Helen claims Loretta's actions wrongfully deprived her. 42 C. J. S. *Husband and Wife* § 665 at 319 (1944).

Since loss of consortium is not necessarily an element ■ of damages in a cause of action for criminal conversation and Helen nowhere expressly seeks damages for loss of consortium in her cause of action for criminal conversation, we cannot say that Helen received a double recovery for loss of consortium.

Neither can we say that Helen received a double recovery for other losses she allegedly sustained. Helen's complaint, again as we read it, does not claim damages for other losses under her cause of action for alienation of affections that she also claims under her cause of action for criminal conversation. There are, moreover, no elements of damages that are necessarily included in both causes of action. While, perhaps, Helen's complaint seeks damages under one cause of action that are similar to damages that she seeks under the other, the damages sought are not identical.

The trial judge, therefore, committed no error in de- ■ nying Loretta's motion to require Helen to elect between causes of action for alienation of affections and criminal conversation. The causes of action are distinct, they arose out of separate and distinct facts, and the two alleged wrongs did not result in a single and the same loss. *See* 28 C. J. S. *Election of Remedies* § 3 at 1065 (1941) (the doctrine of election of remedies "does not require election between distinct causes of action arising out of separate and distinct facts," but a plaintiff must elect his remedy "where two distinct wrongs result only in a single and the same loss . . . if they may not be pursued together without prejudice to defendant.")

### III.

Loretta next argues that she is entitled to a new trial based on the amounts of the verdicts. She argues that ver-

dicts of $25,000 actual damages and $10,000 punitive damages for alienation of affections and $35,000 actual damages for criminal conversation were so excessive as to indicate that the jury was motivated by passion or prejudice.

The proper amount of damages in an action for alienation of affections as well as in an action for criminal conversation depends upon the particular facts and circumstances of each case. 42 C. J. S. *Husband and Wife* § 696 at 351 (1944); *Id.* § 706a at 362. Where, as in the instant case, the amount of damages cannot be determined by mere computation, an appellate court will not set aside a verdict unless it is "so grossly excessive as to be deemed the result of a disregard of the facts and of the instructions of the court and to be due to passion and prejudice rather than reason." *Bruno v. Pendleton Realty Co.*, 240 S. C. 46, 55, 124 S. E. (2d) 580, 584, 95 A. L. R. (2d) 1333, 1340 (1962); *Fennell v. Littlejohn, supra;* 25A C. J. S. *Damages* § 196 at 262 (1966).

We cannot say that, as a matter of law, the verdicts in this case are so excessive that they should have been set aside by the trial judge. Indeed, other courts have refused to set aside verdicts represented by larger sums in cases involving similar causes of action. *See, e.g., Vogel v. Sylvester*, 148 Conn. 666, 174 A. (2d) 122, 96 A. L. R. (2d) 893 (1961) (wherein the court upheld an award of $42,500 for alienation of affections); *Giltner v. Stark*, 219 N. W. (2d) 700 (Iowa 1974) (wherein the court upheld an award of $60,000 for criminal conversation).

The losses that the jury found Helen to have suffered have no market value and the losses are such that reasonable people could differ in their opinions concerning their worth. Nothing in the record establishes as a matter of law that Helen's losses were worth less than the jury determined.

Also, Loretta has not directed us either to any trial event or to any item of evidence that might have caused the jury to base its award on improper considerations. *Lucht v. Youngblood*, 266 S. C. 127, 221 S. E. (2d) 854 (1976).

The trial judge, who heard the evidence and was familiar with the atmosphere at trial, committed no error, therefore, in denying Loretta's motion for a new trial based on the amounts of the verdicts in this case. *Broom v. Southeastern Highway Contracting Co.*, 291 S. C. 93, 352 S. E. (2d) 302 (Ct. App. 1986).

## IV.

Finally, Loretta argues that the trial judge erred in denying her motion for a new trial *nisi* on the cause of action for criminal conversation. Again, she claims the verdict was clearly excessive.

A motion for a new trial *nisi* is addressed to the ██ sound discretion of the trial judge. *Graham v. Whitaker*, 282 S. C. 393, 321 S. E. (2d) 40 (1984). We find no abuse of discretion by the trial judge in denying the motion made here. It is clear to us that the trial judge carefully considered Loretta's motion. After all, he required Helen to reduce by $30,000 the amount of damages the jury awarded her on her cause of action for alienation of affections.

Accordingly, the judgment below is

Affirmed.

BELL and CURETON, JJ., concur.