## 2069

Judith Elena PERRY, f/k/a/ Judith G. Cooper, Respondent-Appellant v. James M. GREEN, III, Appellant-Respondent.

(437 S.E. (2d) 150)

Court of Appeals

*Charles E. Carpenter, Jr.* and *Deborah L. Harrison,* of *Richardson, Plowden, Grier & Howser,* Columbia, *for appellant-respondent.*

*Thomas W. Bunch, II* and *Jacquelyn L. Bartley,* of *Robinson, McFadden & Moore,* Columbia, *for respondent-appellant.*

Heard June 15, 1993.

Decided Aug. 23, 1993.

HOWELL, Chief Judge:

Judith E. Perry sued James E. Green, III, for failure to convey registration papers on a registered Arabian mare, "Lanora," that Perry bought from Green. The case was tried by both a judge and jury. The jury awarded Perry actual and punitive damages. The judge granted Perry specific performance but denied her cause of action for a violation of the South Carolina Unfair Trade Practices Act (UTPA), S.C. Code Ann. Sections 39-5-10 *et seq.* (1976). Both parties appeal. We affirm.

Perry purchased Lanora for the uncontroverted purpose of performance as a brood mare on Perry's horse farm. It was undisputed that under the terms of the contract Perry was to pay Green fifteen hundred dollars down and fifteen hundred

dollars in one year at ten percent interest. Perry complied with all of the terms of the contract by paying the full purchase price plus interest. It is disputed, however, as to whether Green received the initial fifteen hundred dollar down payment. The evidence indicated that amount may have been applied to an outstanding bill that Green owed Fendi Farms, the farm where Lanora was boarded at the time of the sale. Perry testified both payments were made through Fendi Farms. The final payment was made in January of 1985 and was undisputedly forwarded to Green shortly thereafter.

By the terms of the contract, Perry was to receive the registration papers on Lanora upon final payment. Green, however, refused to transfer the registration papers contending he had not been paid in full. He not only refused to transfer the registration papers, but also covertly blocked Perry's attempt to prove full payment and ownership to the Arabian Horse Registry of America and thereby perfect a horseman's lien. Perry continued her efforts to obtain proper registration papers, and Green continued through protests and legal actions to prevent Perry from accomplishing this for approximately six years.

Meanwhile, in 1986, Lanora bore a foal "Silver Mist." Having been unable to obtain the proper registration for Lanora, Perry was unable to register Silver Mist. Upon attaining breeding age, Silver Mist was still ineligible for registration and useless to Perry as a stud for her other brood mares. Sometime thereafter, Perry gelded Silver Mist and leased a stud to perform the function intended of Silver Mist.

The case was tried before a judge and jury and Perry's causes of action for breach of contract and breach of contract accompanied by a fraudulent act were submitted to the jury. The judge retained the cause of action for specific performance and by agreement of the parties, reserved unto himself a decision on the cause of action for a violation of the UTPA. The jury returned a verdict of $77,000 actual damages on the breach of contract cause of action and a verdict of $5,000 actual damages and $50,000 punitive damages on the breach of contract accompanied by a fraudulent act cause of action. The trial judge *sua sponte* recognized that the breach of contract and the breach of contract accompanied by a fraudulent act

causes of action necessarily arose out of the same transaction and therefore would allow for only one recovery of actual damages. By written order, he corrected the double recovery by deleting the award of $5,000 actual damages and awarding $77,000 actual damages and $50,000 punitive damages in one verdict. He thereafter granted the prayer for specific performance ordering Green to deliver the registration papers. On the final cause of action, the trial judge found that the acts of Green were not susceptible to repetition and returned a verdict for Green on the UTPA cause of action.

Green appeals and charges error on the part of the trial judge in first failing to require the parties to elect between the remedies of damages for breach of contract and specific performance. The law is clear, however, that one can recover both specific performance and the damages ensuing from the delay in performance. *See White v. Felkel*, 225 S.C. 453, 459, 82 S.E. (2d) 813, 816 (1954) (a court of equity has full jurisdiction in addition to decreeing specific performance, to award such legal damages as have resulted from delay in the performance of the contract, as, for example, business loss resulting from delay in the defendant's performing the contract).

The facts are equally clear that this is such a case. Perry proved damages well within the range awarded by the jury based on Green's failure to timely register Lanora as well as the ensuing damages caused by this defect affecting Lanora's offsprings' ability to fulfill their potential. One of Lanora's offspring was irreversibly rendered unproductive for its intended purpose. The court mandated specific performance would not have negated this situation and adequately compensated Perry for the damages resulting from the breach that were foreseeable and within the contemplation of the parties. *See White*, 225 S.C. at 459, 82 S.E. (2d) at 816 (Equity may award damages or pecuniary compensation to the plaintiff along with specific performance when the decree as awarded does not give complete and full relief.). In other words, pecuniary damages occurred within the six-year period prior to Perry's obtaining proper registration for Lanora that could not have been adequately remedied simply by requiring specific performance.

Green next assigns error to the trial judge for failing to grant Green's posttrial motions for judgment notwithstanding the verdict on the breach of contract and breach of contract accompanied by a fraudulent act causes of action alleging there was no evidence to support the contention that the providing of registration papers was an essential term and condition of the contract and that further there was no evidence of a fraudulent act. In determining whether the trial court erred in denying Green's motions for judgment notwithstanding the verdict, we must view the evidence and all reasonable inferences to be drawn therefrom in the light most favorable to Perry, the nonmoving party. *Woods v. Rabon,* 295 S.C. 343, 368 S.E. (2d) 471 (Ct. App. 1988). Our review is limited to determining whether there is any evidence to support the verdict. *Id.*

From reading the record and based on the facts as set forth above, it is clear that there is ample evidence to support both of these propositions and the matters were therefore properly submitted to the jury and the posttrial motions were properly denied. First, there is ample evidence that the providing of the registration papers was an essential term and condition of the contract. In addition to the testimony, we note that in paragraph eight of his Amended Answer and Counterclaim, Green stated he "would further affirmatively assert that plaintiff was to receive the registration papers to the horse upon full payment of the contract price to defendant, which plaintiff failed to do." (Transcript of Record at 8.) Green therefore cannot now take a position inconsistent with his own pleadings. *Elrod v. All,* 243 S.C. 425, 134 S.E. (2d) 410 (1964).

Ample evidence also supports the jury's finding of a fraudulent act accompanying the breach of contract. In an action for breach of contract accompanied by a fraudulent act, the fraudulent act element is met by any act characterized by dishonesty in fact, unfair dealing, or the unlawful appropriation of another's property by design. *Harper v. Ethridge,* 290 S.C. 112, 348 S.E. (2d) 374 (Ct. App. 1986). Our review of the record reveals numerous acts that satisfy this requirement. In particular, we note Green's covert efforts to lock Perry's attempt to prove full payment and ownership to the Arabian Horse Registry.

Additionally and contrary to Green's assertion, the fraudulent acts were committed in temporal proximity to the breach of contract. The breach began when Green refused to transfer the registration papers and was ongoing as long as he refused to transfer them. Finally, we find no merit to Green's argument that since Perry did not recover on her claim for fraud, she cannot recover for breach of contract accompanied by a fraudulent act. These two causes of actions are not based on the same elements. *See Harper,* 290 S.C. at 118, 348 S.E. (2d) at 378 (action for breach of contract accompanied by fraudulent act is not based on the same elements as the action in tort for fraud and deceit).

As to Green's assignments of error four, five, and six regarding the issue of damages, a reading of the record shows that all three of these alleged errors are without merit. The testimony demonstrated the damages were calculated by accepted methods according to the experts and were within the range of damages projected by these experts. The damages are therefore not speculative or conjectural. The contract at issue on its face shows that breeding Lanora was within the contemplation of the parties. Therefore, the damages associated with the breeding of Lanora and the future value and income of her offspring were within the contemplation of the parties. The amount of damages is a question for the jury. *Bonaparte v. Floyd,* 291 S.C. 427, 354 S.E. (2d) 40 (Ct. App. 1987).

In regard to the allegation that Perry failed to mitigate her damages by failing to forebear on her decision to geld Silver mist, this is unsupported by the evidence. The burden of proving lack of due diligence in minimizing damages is on Green. *Adams v. Orr,* 260 S.C. 92, 194 S.E. (2d) 232 (1973). Green did not meet this burden. To the contrary, there is ample evidence to support the proposition that Perry acted reasonably in regard to her decision to geld Silver Mist. Perry was also not required to submit to Green's demands for additional payment in that the evidence is susceptible to the conclusion that the full purchase price had already been paid by Perry. The issue of the mitigation of damages was properly charged and submitted to the jury. *McClary v. Massey Ferguson, Inc.,* 291 S.C. 506, S.E. (2d) 405 (Ct. App. 1987).

Next, Green argues the damages were excessive and the

result of passion and prejudice or undue liberality on the part of the jury and the trial court should have granted a new trial on damages. To support this argument, Green first claims the admission into evidence of a settlement agreement from a federal court action regarding the sale of another horse inflamed the jury and resulted in an excessive verdict. The trial judge admitted this settlement agreement as relevant to the unfair trade practices cause of action. Admission of evidence is within the sound discretion of the trial court whose discretion will not be disturbed on appeal absent clear abuse of discretion amounting to an error of law. *Adamson v. Marianne Fabrics, Inc.*, 301 S.C. 204, 391 S.E. (2d) 249 (1990). We see no such abuse here.

We likewise see no abuse of discretion in the trial judge denying Green a new trial on damages even though the trial judge stated, "I am frank to admit that had I been the finder of fact, I would not have given a verdict for that amount." As stated in *Brabham v. Southern Asphalt Haulers, Inc.*, 223 S.C. 421, 76 S.E. (2d) 301 (1953):

> The Court must respect the verdict of the jury in fact as well as in pretense or theory and must not interfere or substitute its own judgment for that of the jurors. One is entitled to the constitutional privilege of the fair judgment of the jury rather than that of the Court and this Court will not interfere with the verdict of a jury simply because it is greater than its own estimate; only where the verdict is so grossly excessive as to shock the conscience of the Court and clearly manifest that it was the result of caprice, passion, partiality, prejudice, corruption or other improper motives, will this Court intervene.

*Id.* at 430, 76 S.E. (2d) at 306; *see also Hyload, Inc. v. Pre-Engineered Products, Inc.*, — S.C. —, 417 S.E. (2d) 622 (Ct. App. 1992) (the granting of a new trial on the grounds of an excessive verdict is within the discretion of the trial judge whose decision will not be disturbed on appeal unless the verdict is wholly unsupported by the evidence). As we have repeatedly stated, there is ample evidence in the record to support the jury's verdict.

We need not address Green's argument concerning the timeliness of the posttrial motions because it is moot in light

of the trial court's hearing of and ruling on these motions on their merits. *See Jones v. Dillon-Marion Human Resources Development Commission*, 277 S.C. 533, 291 S.E. (2d) 195 (1982) (the Supreme Court will not pass on moot and academic questions).

The final issue is raised by Perry in her assignment of error for the failure of the trial judge to return a verdict in her favor on the UTPA cause of action. After reviewing the record, we agree with the trial judge that the conduct at issue was not readily susceptible to repetition such that it rises to the required level of having an impact on public interest.

> To be actionable under the Unfair Trade Practices Act, an unfair or deceptive act or practice must have an impact upon the public interest. The Act is not available to redress a private wrong where the public interest is unaffected. . . . Further, a deliberate or intentional breach of a valid contract, without more, does not constitute a violation of the Unfair Trade Practices Act.

*Columbia East Associates v. Bi-Lo, Inc.*, 299 S.C. 515, 522, 386 S.E. (2d) 259, 263 (Ct. App. 1989).

Accordingly, we

Affirm.

BELL, J., and LITTLEJOHN, Acting Judge, concur.