# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Encore Technology Group, LLC, Respondent/Appellant,

v.

Keone Trask and Clear Touch Interactive, Inc. f/k/a Clear Touch Interactive, LLC, Appellants/Respondents.

AND

Clear Touch Interactive, Inc. f/k/a Clear Touch Interactive, LLC, Appellant/Respondent,

v.

Encore Technology Group, LLC, Respondent/Appellant.

Appellate Case No. 2018-001444

———————

Appeal From Greenville County
R. Lawton McIntosh, Circuit Court Judge

———————

Opinion No. 5871
Heard September 15, 2021 – Filed November 24, 2021

———————

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED**

———————

Joseph Owen Smith and Joshua Jennings Hudson, both of Smith Hudson Law, LLC, of Greenville, for Keone Trask and Clear Touch Interactive, Inc.

Gregory Jacobs English and Rita Bolt Barker, both of Wyche, PA, of Greenville, for Encore Technology Group, LLC.

---

**HEWITT, J.:** This is a consolidated appeal of two cases. We heard them in conjunction with a third case. All three arise out of a dispute between Encore Technology Group, LLC (Encore) and Keone Trask.

Trask is a former Encore executive. These controversies center around the fact that he was running another company—Clear Touch Interactive, Inc. (Clear Touch)—and competing with Encore at the same time he was working for Encore.

In the first of the consolidated cases, Encore sued Trask and Clear Touch on eight claims and won on six. A jury awarded a total of roughly $7.9 million against Trask and $1.7 million against Clear Touch. The total against Trask is hotly disputed. Election of remedies is the main issue and the predominant topic of this opinion.

In the second case, Clear Touch appeals an order dismissing the lawsuit it brought against Encore. The main issue in that case is res judicata.

As mentioned above, the third case is not consolidated with the others and is a case about Clear Touch's corporate structure. We will refer to that case as *Powell*, though we deal with it in a separate (and unpublished) opinion.

It is impossible to summarize our decision in a way that is comprehensive but concise. Depending on how you count, the parties raised as many as seventeen issues. In the first case, we hold Encore's damages for breach of contract with a fraudulent act necessarily encompassed Encore's damages for breach of contract, misappropriation of trade secrets, and breach of fiduciary duty. Thus, we find the circuit court erred in holding Encore did not have to elect between most of its remedies against Trask. In all other respects, the circuit court's decision is affirmed.

In the second case, we find the circuit court correctly held Clear Touch's lawsuit against Encore was barred by res judicata. Clear Touch used the same facts for an unclean hands defense in the first case.

**FACTS**

Encore, Trask, and Clear Touch are all in the "classroom technology" business. Trask's job at Encore included selecting a vendor to supply Encore with touchscreen technology to sell to schools. There is basically no dispute that Trask created Clear Touch before he joined Encore, used Clear Touch to import touchscreen technology from overseas, and sold the technology to Encore after marking up the price. Trask kept his involvement with Clear Touch a secret throughout his time at Encore.

Encore eventually learned this history and sued. It sued Trask for breach of the duty of loyalty, breach of fiduciary duties, breach of contract, and breach of contract accompanied by a fraudulent act. It sued Clear Touch for tortious interference, and it sued Trask and Clear Touch together for allegedly violating the South Carolina Trade Secrets Act, the Unfair Trade Practices Act, and for defamation. Encore additionally brought an equitable claim against Clear Touch for restitution.

About two weeks before trial, Clear Touch sued Encore in a separate case based on materials Encore turned over in discovery approximately four months earlier. Not long after the trial on Encore's claims ended, the circuit court dismissed Clear Touch's case based on res judicata. As noted in our introduction to this opinion, the reason for this dismissal was that Clear Touch used the same facts for an unclean hands defense against Encore's claims in the recently-concluded trial.

Damages are a key feature of this appeal. The parties argue at length over testimony from Encore's accounting expert about the different methods he used to calculate Encore's damages. The expert created three tables, all of which were entered into evidence separately from the expert's report.

Table 1 was the expert's calculation of the direct costs such as wages, benefits, expense reimbursements, and costs that Encore incurred during Trask's employment. Encore sought these as damages based on its claim that Trask and other allegedly disloyal employees were building Clear Touch's business while they were on Encore's payroll. Here, the total claimed damages were roughly $448,000.

Table 2 was the expert's calculation of Encore's lost profits. There were two categories of these: profits on sales Clear Touch made to Encore (again, at markup; diminishing Encore's profit margin) and profits on sales Clear Touch made to Leon County Schools—an Encore customer. The calculations were broken down into periods correlating to the time Trask was employed with Encore, the time Trask's noncompete provision was in place, and the time between the expiration of Trask's noncompete and Encore terminating its relationship with Clear Touch. This table put Encore's lost profits at roughly $1.1 million.

Table 3 contained the expert's calculation of Encore's damages related to the loss of Clear Touch as a "business opportunity." Encore claimed Trask (its Chief Business Development Officer) was obligated to develop the opportunity he saw in Clear Touch as a part of Encore rather than as a separate business for his own benefit. Table 3 broke down Clear Touch's normalized profits into several different time periods. The expert calculated that the Clear Touch opportunity had a fair market value of $3.9 million as of December 31, 2015. The total damages in this table, including all normalized profits and the expert's fair market value calculation, amounted to about $5.5 million.

The jury found for Encore on six of its eight claims. It awarded the exact same amount of actual damages on two claims against Trask and two claims against Clear Touch. The awards of actual damages are as follows:

Against Trask

Against Clear Touch

Breach of Loyalty: $375,733.40
Fiduciary Duty: $675,361
Breach of Contract: $424,945
Trade Secrets: $424,945
Breach with Fraud: $1,476,039.40

Trade Secrets: $424,945
Tortious Interference: $424,945

The jury awarded exemplary or punitive damages on all claims in which they were available. The largest punitive award against Trask was on breach of contract accompanied by a fraudulent act for $2 million.

The circuit court held Encore need only elect between the claims in which the jury awarded the same amount of actual damages. Against Trask, these were breach of contract and misappropriation of trade secrets. The court reasoned distinct facts gave rise to Encore's other various claims and that the jury used each of those claims to compensate for different injuries from Trask's wrongful conduct.

The court denied Trask and Clear Touch's post-trial motions and awarded Encore attorneys' fees and costs. The court also denied Encore's post-trial motion to be awarded the fair market value of Clear Touch as restitution.

Clear Touch paid the judgment against it into court, but the court appointed a receiver and allowed Encore to intervene in a separate case—*Powell*—to secure the judgment against Trask. Trask eventually paid the judgments against him into court.

This appeal followed. After that, the circuit court stayed the receivership and dismissed Encore from *Powell*.

## ISSUES

In Encore's case against Trask and Clear Touch, Trask and Clear Touch argue about election of remedies, a new trial absolute, a new trial nisi remittitur, judgment notwithstanding the verdict (JNOV), a new trial pursuant to the thirteenth juror doctrine, and attorneys' fees and costs. Trask also appeals the order appointing a receiver and argues the order allowed the receiver to violate South Carolina law.

Encore filed a cross-appeal in that same case and argues the circuit court erred in holding it was not entitled to restitution.

In the other of the consolidated cases, Clear Touch appeals the order dismissing (on the ground of res judicata) its suit against Encore.

## ELECTION OF REMEDIES

The jury awarded Encore the same amount of actual damages—$424,945—for Encore's breach of contract and trade secret misappropriation claims. Actual damages for the other claims varied considerably.

The circuit court required Encore to elect only between the breach of contract and trade secret claims. Trask argues this was error because Encore should be required to elect between all of its claims as all of its claims overlap.

As it applies here, "election of remedies" refers to the fact that a party may not receive a double recovery. There may be multiple ways to recover for a single injury or set of injuries, but a party may only recover once for those injuries. *Austin v. Stokes-Craven Holding Corp.*, 387 S.C. 22, 56, 691 S.E.2d 135, 153 (2010) (noting the purpose of election of remedies is to prevent double recovery).

Evaluating whether a party must elect between remedies requires examining at least three things. One is whether there are overlapping elements of damages among multiple claims. Even if there is overlap, the plaintiff may avoid election if the claims were litigated as based on different injuries—put differently, whether different facts support the different claims. It can also be useful to look at how the jury was charged with respect to a double recovery. We will discuss these in turn.

To briefly illustrate overlapping damages, consider *Collins Music Co. v. Smith*, 332 S.C. 145, 503 S.E.2d 481 (Ct. App. 1998). There, we explained that though breach of contract and intentional interference with contract are separate torts (and brought against separate parties), the damages for intentional interference will necessarily include the damages for the contract's breach. *Id*. at 147-48, 503 S.E.2d at 482.

To illustrate claims based on different injuries—claims supported by separate facts—consider *Rivers v. Rivers*, 292 S.C. 21, 354 S.E.2d 784 (Ct. App. 1987), *superseded by statute on other grounds as recognized in Russo v. Sutton*, 310 S.C. 200, 422 S.E.2d 70 (1992). There, we noted that although the torts of criminal conversation and alienation of affection had distinct elements, the losses recoverable were similar. *Id*. at 29, 354 S.E.2d at 789. We held that a plaintiff could recover under both torts, but only if the plaintiff alleged a particular loss from each. *Id*. at 30, 354 S.E.2d at 789.

*Rivers* also shows how the jury charges are relevant. There, we said "the trial judge should caution the jury against giving damages under both [criminal conversation and alienation of affection] for the same loss and should instruct the jury that it should not allow the plaintiff to recover twice for the same thing." *Id*.; *see also Creach v. Sara Lee Corp.*, 331 S.C. 461, 464, 502 S.E.2d 923, 924 (Ct. App. 1998) (noting several jury instructions were given that the plaintiff was not entitled to multiple redress for a single wrong).

Applying these guideposts, there can be no question that, with one exception—breach of loyalty—Encore must elect between its causes of action against Trask.

First, the full field of damages Encore sought to recover for breach of contract, misappropriation of trade secrets, and breach of fiduciary duty was available for the jury to award under the claim for breach of contract accompanied by a fraudulent act. Trask's breach of his fiduciary duty was itself a breach of his employment agreement with Encore. Trask's misuse of Encore's trade secrets breached the same contract. The damages for breach of contract entitle the aggrieved party to recover all actual damages for the breach's direct and natural consequences. *Collins Music Co.*, 332 S.C. at 147, 503 S.E.2d at 482. Those damages include "profits or gains prevented, as well as losses sustained." *Nat'l Tire & Rubber Co. v. Hoover*, 128 S.C. 344, 348, 122 S.E. 858, 859 (1924). The actual damages available for breach accompanied by a fraudulent act are likely broader than for breach of contract because the fraud claim sounds in tort. *See Collins Music Co.*, 332 S.C. at 147-48, 503 S.E.2d at 482 (damages for intentional interference with contract are broader

than for breach of contract). Thus, it is evident—and Encore does not dispute—that the damages available for these four claims completely overlap.

As noted above, that is not the case for the breach of loyalty claim. For that claim, the circuit court charged that an employee is entitled to no compensation for conduct that is disobedient and that if the employee's conduct is a willful and deliberate breach, he is not entitled to compensation, even for properly performed services. Disgorgement of wages is not an element of damages for breach of fiduciary duty, breach of contract, breach of contract with a fraudulent act, or misuse of trade secrets.

Second, Encore asserted the same facts in support of these claims. The circuit court's decision on election was controlled by its agreement with Encore's post-verdict argument that Encore had presented the case in a way that asked the jury to use the different claims to compensate for different harms. The court found the jury used breach of fiduciary duty to compensate for Clear Touch's "marked up" sales to Encore. It found the jury used trade secrets and breach of contract to compensate for Clear Touch's sales directly to Leon County Schools. And it found the jury used breach of contract with fraud to compensate for the lost chance to develop Clear Touch as part of Encore.

We cannot agree. The record directly refutes the suggestion Encore litigated the case that way. Encore argued the same overarching set of facts to prove its causes of action for breach of fiduciary duty, breach of contract, misappropriation of trade secrets, and breach of contract accompanied by a fraudulent act. Encore did not plead or argue that its breach of fiduciary duty claim was for Clear Touch's "marked-up" sales to Encore. Encore did not plead or argue that its breach of contract with fraud claim was for the lost opportunity in Clear Touch. Encore argued that all of these claims stemmed from and encompassed Trask's failure to disclose his interest in Clear Touch and his web of self-dealing.

For proof, one need look no further than Encore's closing arguments. Encore asked the jury for the exact same amount of damages for breach of fiduciary duty, breach of contract, trade secrets, and breach of contract with fraud. The amount Encore asked for in damages for each of these causes of action—roughly $5.5 million—was Encore's full estimate of the lost Clear Touch business opportunity and necessarily encompassed all of the damages available under these causes of action. Encore correctly observes that arguments of counsel are not evidence, but the point remains that it litigated the case as though these four claims encompassed the same set of injuries and damages.

Third, the circuit court charged the jury that each cause of action was separate and that the jury was not to concern itself with a double recovery. In other words, the charges suggested the jury award Encore all damages that were justified under each claim; not that it should segregate Encore's harms under various claims.

Encore's argument for sustaining the verdict is two-fold. It points to the distinctly different awards for several of the claims and to how neatly some of those awards correspond to different categories of Encore's alleged damages. It also points to the principle that the court must sustain a verdict if it is possible to do so.

We cannot agree with either argument. As to the amount of damages, the jury may well have used breach of fiduciary duty to compensate for Clear Touch's "marked up" sales to Encore. The award for breach of contract corresponds exactly to the direct damages for sales to Encore from Encore's "Table 2." The jury may have used trade secrets and breach of contract to award damages for Clear Touch's sales to Leon County. The award for those claims corresponds exactly to the same exhibit.

But we do not know this is what the jury did—this is just speculation, even if it is speculation that seems to make good sense. What is more, we have no way whatsoever to know that the jury's award of nearly $1.5 million in damages for breach of contract with a fraudulent act does not include the damages mentioned above. Absent clarification from the jury (which nobody requested), we are not aware of any legal basis for finding that the jury used the breach with fraud claim to compensate Encore for damages that are different than the jury awarded elsewhere.

As to Encore's point that the court must enforce each of the separate verdicts if it is possible to do so, that is not an accurate statement of the law. A verdict will be upheld when it is possible to do so, but the guidepost for the court is enforcing the jury's intent. *Vinson v. Jackson*, 327 S.C. 290, 293, 491 S.E.2d 249, 250 (1997). Nothing from the jury indicated it intended the awards in this case to be added together. As noted above, the record directly refutes Encore's argument that it litigated the claims as seeking to compensate for separate harms.

After we conducted oral argument, Trask and Clear Touch filed a motion aimed at asking the circuit court to modify the part of its judgment that said Trask and Clear Touch were both separately liable for exemplary damages on the trade secret claim. We dismiss that motion as moot in light of our decision on election of remedies, as we presume Encore will elect to recover on the largest award—breach of contract with a fraudulent act.

**NEW TRIAL ABSOLUTE**

Trask and Clear Touch argue they were prejudiced by the admission of Table 3 into evidence. This was Encore's estimated value (or rather, its expert's estimated value) of Encore's "lost opportunity" in Clear Touch.

First, the circuit court did not abuse its discretion in allowing Table 3 into evidence. *See Whaley v. CSX Transp., Inc.*, 362 S.C. 456, 483, 609 S.E.2d 286, 300 (2005) (holding the admission of evidence is within the trial court's discretion and will not be reversed absent an abuse of discretion). It is undisputed that Trask built the Clear Touch business using Encore's money, personnel, and other resources. Encore's expert explained how he calculated the damages in Table 3, and his report explained that calculation as well. Table 3 contained the expert's calculations regarding Clear Touch's profits through 2015 and the value of Clear Touch as a company as of December 31, 2015, both of which—profits and Clear Touch's value as a company—constitute ways to value the loss Encore suffered as a result of Trask's nondisclosure. *See Minter v. GOCT, Inc.*, 322 S.C. 525, 528, 473 S.E.2d 67, 70 (Ct. App. 1996) (explaining damages for breach of contract should put the plaintiff in as good a position as he would have been if the contract had been performed, that the plaintiff's loss is the proper measure of compensation, and that damages need not be proved with mathematical certainty).

Second, the circuit court found the damages awarded were appropriate. The circuit court may grant a new trial based on damages "only when the verdict 'is shockingly disproportionate to the injuries suffered and thus indicates that passion, caprice, prejudice, or other considerations not reflected by the evidence affected the amount awarded.'" *Burke v. AnMed Health*, 393 S.C. 48, 56, 710 S.E.2d 84, 88 (Ct. App. 2011) (quoting *Becker v. Wal-Mart Stores, Inc.*, 339 S.C. 629, 635, 529 S.E.2d 758, 761 (2000)). We defer to the jury's determination of damages, and we review the decision to grant or deny a new trial by asking whether the circuit court abused its discretion. *Id*. We cannot say the circuit court abused its discretion in determining the damages were fitting given the circumstances.

Third, we find the argument that Trask and Clear Touch were prejudiced by the admission of Table 3 is abandoned. Trask and Clear Touch provided no supporting authority, and precedent explains arguments without supporting authority are abandoned. *See Glasscock, Inc. v. U.S. Fid. & Guar. Co.*, 348 S.C. 76, 81, 557 S.E.2d 689, 691 (Ct. App. 2001). Trask and Clear Touch argue that Table 3 improperly set an artificially high "ceiling" for Encore's damages. We could not

locate any case adopting this sort of argument, and we could not reconcile the argument with Trask and Clear Touch's insistence elsewhere that the jury did not award Encore any damages from Table 3.

## NEW TRIAL NISI REMITTITUR

Trask and Clear Touch argue the circuit court abused its discretion in denying their motion for a new trial nisi remittitur. They claim the court erred in supporting its findings by stating the actual verdict amounts were appropriate and well within the range of damages supported by the evidence.

This court does not sit to determine whether it agrees with the jury's verdict or to decide whether it agrees with the circuit court's decision to let the jury's verdict stand. The standard of review is highly deferential when examining the circuit court's ruling on each ground for a new trial. *See Burke*, 393 S.C. at 57, 710 S.E.2d at 89 ("A jury's determination of damages is entitled to 'substantial deference.'" (quoting *Todd v. Joyner*, 385 S.C. 509, 517, 685 S.E.2d 613, 618 (Ct. App. 2008)); *id.* ("The decision to grant or deny a 'new trial motion rests within the discretion of the circuit court, and its decision will not be disturbed on appeal unless its findings are wholly unsupported by the evidence or the conclusions reached are controlled by error of law.'" (quoting *Brinkley v. S.C. Dep't of Corr.*, 386 S.C. 182, 185, 687 S.E.2d 54, 56 (Ct. App. 2009))); *id.* at 56-57, 710 S.E.2d at 88-89 ("'The denial of a motion for a new trial nisi is within the trial court's discretion and will not be reversed on appeal absent an abuse of discretion.'" (quoting *James v. Horace Mann Ins. Co.*, 371 S.C. 187, 193, 638 S.E.2d 667, 670 (2006))); *see also Bailey v. Peacock*, 318 S.C. 13, 14, 455 S.E.2d 690, 691 (1995) ("If an award is merely inadequate or unduly liberal, the trial judge alone has the discretion to grant a new trial *nisi additur*."). We find this deference is appropriate given the facts in this case and especially given our holding requiring Encore to elect between most of its awards against Trask. The circuit court believed the verdict was appropriate and declined to invade the jury's province. We do not see a good reason to question that decision, much less an abuse of discretion.

## JUDGMENT NOT WITHSTANDING THE VERDICT

There are multiple JNOV arguments. First, Trask asserts the circuit court erred in enforcing the restrictive covenants in his noncompete and confidentiality agreement. He contends the covenants were overbroad and that this entitles him to JNOV on the breach of contract and the breach of contract with fraud claims.

This argument is barred by the two-issue rule. Encore argued there were five ways Trask breached the parties' contract. Trask did not argue JNOV was inappropriate on all of these grounds; thus, the jury could have found Trask breached the agreement's non-piracy of employees provision, the business opportunity provision, the implied covenant of good faith and fair dealing, or any combination of those provisions. *See Atl. Coast Builders & Contractors, LLC v. Lewis*, 398 S.C. 323, 328, 730 S.E.2d 282, 284 ("Under the two[-]issue rule, where a decision is based on more than one ground, the appellate court will affirm unless the appellant appeals all grounds because the unappealed ground will become law of the case." (quoting *Jones v. Lott*, 387 S.C. 339, 346, 692 S.E.2d 900, 903 (2010))).

Second, Trask and Clear Touch contend Encore failed to provide sufficient evidence to support Encore's claim for misappropriation of trade secrets. We disagree.

Encore presented evidence that Trask had confidential information related to Leon County Schools beyond the general knowledge that the school system was upgrading its technology. Trask knew Leon wanted to purchase specific Clear Touch panels, the number of panels Leon wanted, the price at which Encore was willing to sell the panels, and the price at which Leon was willing to buy the panels. Encore presented evidence Trask learned this information because of his employment at Encore. Encore also presented evidence that it took steps to keep this information secret.

In other words, Encore presented evidence from which the jury could have found the information was a trade secret. *See* S.C. Code Ann. § 39-8-20(5) (Supp. 2020) (defining a trade secret as information deriving independent economic value from not being generally known or readily ascertainable if there are reasonable efforts to maintain its secrecy). There was also evidence Trask and Clear Touch misappropriated this information to make sales directly to Leon; thus, the trial court did not err in denying the motion for JNOV. *See Burns v. Universal Health Servs., Inc.*, 361 S.C. 221, 232, 603 S.E.2d 605, 611 (Ct. App. 2004) ("The appellate court will reverse the trial court's ruling on a JNOV motion only when there is no evidence to support the ruling or where the ruling is controlled by an error of law."); *id.* ("The verdict will be upheld if there is any evidence to sustain the factual findings implicit in the jury's verdict."); *Gastineau v. Murphy*, 331 S.C. 565, 568, 503 S.E.2d 712, 713 (1998) ("A motion for JNOV may be granted only if no reasonable jury could have reached the challenged verdict.").

**THIRTEENTH JUROR DOCTRINE**

Trask and Clear Touch argue the circuit court abused its discretion by denying the motion for a new trial pursuant to the thirteenth juror doctrine. They assert the jury returned inconsistent verdicts because the jury awarded different actual damages for breach of contract and breach of contract with a fraudulent act.

The circuit court's grant or denial of a new trial motion under the thirteenth juror doctrine will stand unless it is wholly unsupported by the evidence or controlled by an error of law. *Folkens v. Hunt*, 300 S.C. 251, 254-55, 387 S.E.2d 265, 267 (1990). Trask and Clear Touch cite *Perry v. Green*, but *Perry* mentions the trial court *sua sponte* found identical awards were required in that case for breach of contract and breach of contract with a fraudulent act, and the point was not raised on appeal. 313 S.C. 250, 252-53, 437 S.E.2d 150, 151 (Ct. App. 1993). Moreover, the court in *Perry* corrected for a double recovery by removing the smaller verdict and allowing the plaintiff to recover the greater. *Id*. at 253, 437 S.E.2d at 151. The different verdicts are not "irreconcilably inconsistent" as required for reversal. *See Vinson v. Jackson*, 327 S.C. 290, 293, 491 S.E.2d 249, 250 (1997) (explaining the court's job after a trial is to carry out the jury's intent and that the court should reverse a verdict that is internally inconsistent and unexplainable). If anything, *Perry* suggests Encore should recover the larger verdict, not that there should be a new trial.

## ATTORNEYS' FEES AND COSTS

Trask and Clear Touch argue the circuit court erred in awarding Encore all of its fees and expenses and that the court failed to consider attorneys' fees were only recoverable on three of Encore's eight causes of action. They argue Encore only prevailed on six claims. They also argue the court erred in finding that there was only minimal additional cost to Encore presenting claims that did not allow for a recovery of fees and that the court erred in finding Trask destroyed evidence. Trask and Clear Touch additionally claim Encore's fees are excessive and that Encore only used a fraction of the evidence it obtained in extensive and costly discovery.

The circuit court did not abuse its discretion in awarding Encore all of its attorneys' fees and costs. *See Blumberg v. Nealco, Inc.*, 310 S.C. 492, 493, 427 S.E.2d 659, 660 (1993) ("When there is a contract, the award of attorney's fees is left to the discretion of the trial judge and will not be disturbed unless an abuse of discretion is shown."); *id*. at 494, 427 S.E.2d at 660 ("There are six factors to consider in determining an award of attorney's fees: 1) nature, extent, and difficulty of the legal services rendered; 2) time and labor devoted to the case; 3) professional standing of counsel; 4) contingency of compensation; 5) fee customarily charged in the locality for similar services; and 6) beneficial results obtained."). Trask and Clear Touch do

not challenge the reasonableness of the overall award amount; rather, they assert the award was unreasonable because Encore's attorneys' fees were not specifically attributable to the three causes of action for which attorneys' fees were available. The circuit court was not required to discount the attorneys' fees award because some of Encore's causes of action permitted such an award and others did not. Though it could have reduced the award, it was within the court's discretion to not do so. *See Taylor v. Nix*, 307 S.C. 551, 557, 416 S.E.2d 619, 622 (1992) ("[W]hen an action in which attorney fees are recoverable by statute is joined with alternative theories of recovery based on the same transaction, no allocation of attorney's services need be made except to the extent counsel admits that a portion of the services was totally unrelated to the statutory claim or it is shown that the services related to issues which were clearly beyond the scope of the statutory claim proceeding."); *see generally Austin*, 387 S.C. at 57, 691 S.E.2d at 153 (holding "it would be difficult to dissect . . . counsel's fee affidavit to ascertain how much time was spent on this particular claim given the violation of the Act was based on the same facts and circumstances underlying his claims for fraud and constructive fraud").

## RECEIVER ORDER

Trask asserts the circuit court abused its discretion in authorizing a receiver to take possession of his assets and secure them for the purpose of satisfying Encore's judgment. He claims the order allowed numerous violations of South Carolina law. He also appeals the provision in the order explaining that he will be required to pay the receiver's fees and expenses if the judgment against him is affirmed.

Any argument about the receiver violating the law by collecting exempt assets became moot once the trial court stayed the receivership. *Mathis v. S.C. State Highway Dep't*, 260 S.C. 344, 346, 195 S.E.2d 713, 715 (1973) (noting "[a] case becomes moot when judgment, if rendered, will have no practical legal effect upon existing controversy"). And any argument about Trask being ordered to pay the receiver's fees is not yet ripe for review. Though the circuit court initially ordered that Trask would be automatically liable for the receiver's fees, a later order explained that this would be the subject of a future hearing after the appeal concluded. An argument is not ripe if it is contingent on future events. *Colleton Cnty. Taxpayers Ass'n v. Sch. Dist. of Colleton Cnty.*, 371 S.C. 224, 242, 638 S.E.2d 685, 694 (2006). We will not rule before the circuit court has spoken its last word on the matter.

## RES JUDICATA

This issue relates to the case Clear Touch brought against Encore about two weeks before the trial began in Encore's case against Clear Touch and Trask. Clear Touch claimed Encore started using confidential data it previously acquired from Clear Touch while the companies were working together to unfairly compete with Clear Touch after the relationship between the companies fell apart. The circuit court granted Encore summary judgment under the doctrine of res judicata.

"Res judicata bars subsequent actions by the same parties when the claims arise out of the same transaction or occurrence that was the subject of a prior action between those parties." *Plum Creek Dev. Co. v. City of Conway*, 334 S.C. 30, 34, 512 S.E.2d 106, 109 (1999). Precedent explains "[a] litigant is barred from raising any issues which were adjudicated in the former suit and any issues which might have been raised in the former suit." *Id*. (quoting *Hilton Head Ctr. of S.C., Inc. v. Pub. Serv. Comm'n of S.C.*, 294 S.C. 9, 11, 362 S.E.2d 176, 177 (1987)).

Clear Touch conceded its claims could have been litigated in the primary case. It received the information giving rise to its claims at the end of May 31, 2017, when Encore sent its last round of discovery approximately four months before trial. It goes without saying that it takes time to review discovery, particularly voluminous discovery, but Clear Touch does not dispute that it was well-aware before trial of information leading it to believe it had claims against Encore. The record is clear that Clear Touch never moved to amend its answer and never sought a continuance on the grounds that it needed more time to develop counterclaims that would be forthcoming in an amended answer. The point is made more salient by the fact that Clear Touch sought several continuances but never claimed it needed a continuance because it needed to amend its answer.

Finally (and in our view, critically), Clear Touch used the same factual basis—alleged unfair competition by Encore—as a defense to Encore's motion for restitution. As noted above, res judicata applies to claims that arise out of the same transaction or occurrence covered by a prior suit. Once Clear Touch raised unfair competition, it was obligated to raise all claims related to that unfair competition.

Clear Touch says Encore did not properly raise this preclusion argument to the circuit court, but the question of whether a claim in a later case should have been a compulsory counterclaim in a prior case is the same question as whether res judicata applies. *See Plum Creek Dev. Co.*, 334 S.C. at 34, 512 S.E.2d at 109 ("Res judicata bars subsequent actions by the same parties when the claims arise out of the same transaction or occurrence that was the subject of a prior action between those parties."); *Jaynes v. County of Fairfield*, 303 S.C. 434, 438 n.1, 401 S.E.2d 183, 185

n.1 (Ct. App. 1991) ("[A] counterclaim is compulsory if there is a logical relationship between the claim and the counterclaim.").

## RESTITUTION

We come now to the cross-appeal. Encore argues Trask and Clear Touch have been unjustly enriched in the amount of Clear Touch's value and that the circuit court should have required Clear Touch to pay roughly $5.5 million as restitution. Encore claims the circuit court erred in concluding Encore had an adequate remedy at law.

We agree with the circuit court and respectfully disagree with Encore. Encore had an adequate remedy: it successfully brought claims for trade secret violations, breach of contract with fraud, tortious interference, and others. On many of these claims, Encore asked the jury award to award Clear Touch's full value—$5.5 million—in damages. The jury could have done so but declined to do so. We defer to that decision and, like the circuit court, decline to order equitable relief. *See Milliken & Co. v. Morin*, 386 S.C. 1, 8, 685 S.E.2d 828, 832 (Ct. App. 2009) ("Generally, equitable relief is available only where there is no adequate remedy at law."), *aff'd as modified*, 399 S.C. 23, 731 S.E.2d 288 (2012).

## CONCLUSION

As noted above, we affirm in all respects except for the circuit court's decision not to require Encore to elect its remedy.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

**KONDUROS and HILL, JJ., concur.**